STATE *ex rel.* GEORGE BARTLEY, Petitioner, *v.* THOMAS C. FLETCHER, GOVERNOR, &c., Respondent.

1. *Judiciary—Jurisdiction—Mandamus—Executive.*—The Supreme Court has no jurisdiction to issue a writ of mandamus to the Governor of the State to compel him to issue a commission to an officer. The duty of the Governor to issue a commission is political and not merely ministerial.
2. *Mandamus—Practice—Pleading.*—A petition for a writ of mandamus must state specifically all the facts which give the party the right to maintain an action or to demand the relief he seeks, and must also show that he has no other specific remedy.

*Petition for Mandamus.*

*Sheley* and *Boulware,* for petitioner.

I. This court has full power and authority to compel the Governor to do a mere ministerial act—State ex rel. White-

---

* The proper form of the plea of the statute of limitations in real actions, is, "that the plaintiff, his ancestors, predecessors, &c., were not seized," &c.

man et al. v. Governor, 5 Ohio, 534; Bonner v. State ex rel. Pitts., 7 Ga. 473; Pacific R.R. v. Governor, 23 Mo. 353; Marbury v. Madison, 1 Cranch, 49; Cotton v. Ellis, 7 Jones (N. C.) 545.

It is admitted that this court has no power to compel the executive to do a political act; but one purely ministerial is subject to the control of this court. It is not the grade of the officer sought to be controlled by the court, but the relief sought, or, more properly, the character of the action sought to be controlled. This court cannot by mandamus compel the Circuit Court to enter up a particular judgment, but by mandamus a Circuit Court can be compelled to enter up a judgment—or, in other words, to act in any given case. It is true, the executive is co-ordinate with, and to some extent independent of, the judiciary, but not so high that it may not be reached by the judiciary.

In the case Pacific R.R. v. Governor, Judge Scott, whose argument goes to show that he believed the power existed in this court to compel the Governor by mandamus to do a mere ministerial act, after reasoning at length, he declines giving judgment because the question was waived.

In the case of Marbury v. Madison, C. J. Marshall's argument goes to show that the power existed to compel the delivery of the commission by Secretary Madison, but declines doing so for the want of jurisdiction in the court to issue the writ. He evidently establishes the doctrine that the President could be compelled by mandamus to do a mere ministerial act.

In the case of State, &c., v. Governor, 5 Ohio, the Supreme Court, after reviewing the whole doctrine, unanimously decide that they have the power to compel the Governor by mandamus to do a ministerial act; and Chase, the then Governor, seems to admit the power.

The Attorney General, in the case of Kendall v. United States, 12 Pet. 600, admits that a mandamus will reach the President. It is true this is not authority, but coming from so eminent a lawyer it ought to have some weight. Upon a

review of all the authorities, we are fully persuaded that the weight of authority is with us. In this country we have not adopted the maxim that " the King can do no wrong"; but if the courts refuse to control the executive by mandamus, especially in ministerial acts, we had better at once adopt the English maxim, and be content with whatever an executive may do.

II. The Governor was bound under the law to commission such persons justices of the County Court as were certified to him by the clerk to have been elected, and had no right to go behind the certificate; neither can this court upon proceeding by mandamus go behind the certificate of election—R. C. 1855, p. 556, § 6 ; Mayo v. Freeland, 10 Mo. 629; The People v Head, 25 Ills. 325 ; People v. Hilliard, 29 Ills. 413. The section of the statute making it the duty of the clerk of the County Court to certify to the Governor the names of the persons elected justices of the County Court as well as the term of service, and it is made the imperative duty of the Governor to commission. He has no right to change or alter the return ; it must stand just as it came from the hands of the clerk.

In granting a commission, the Governor acts in a mere ministerial capacity. If the Governor can go behind the certificate and look into the election returns as found in the office of the Secretary of State and pass upon the validity of such returns, then he assumes judicial functions, and at once, so far as that act is concerned, becomes a part of the judiciary, thus blending the executive and judicial departments of the State.

The law nowhere requires the Governor to go to the office of the Secretary of State to learn who have been elected and what terms they are to serve. It makes it his imperative duty upon the reception of the certificate to proceed to commission. The language of the statute is " shall thereupon commission all such persons," &c., not *may* thereupon commission, &c. There is no discretion; his hands are tied, and why ? The Constitution has wisely withheld from the

Governor all judicial power, and the Legislature could not confer it upon him; therefore they say "shall thereupon," leaving the whole question as to the right to hold the office open, to be determined by the proper tribunal, and by the proper writ. This doctrine is fully sustained in the case of The People, &c., v. Kilduff, 15 Ills. 500.

In a proceeding by mandamus, the court cannot go behind the certificate of the canvassers and determine who may have been legally elected to the office. "That certificate afforded *prima facie* evidence that the relator was legally elected, and entitled him to the office till that canvass should be set aside by a proceeding to be instituted by the defeated candidate in the courts of justice and under the forms of law"—25 Ills. 327.

"The decision of the canvassers (in this State, the clerk and two justices of the peace) was conclusive in every form in which the question could arise, except that of a direct proceeding by *quo warranto* to try the right"—The People v. Vail, 20 Wend. 14. In Lamb et al. v. Lynd et al., 44 Pa. 338, the Supreme Court of that State held that the select council could not refuse to perform a duty enjoined by law because a portion of the common council held their office by fraud, and say "officially they must treat as right what they have no authority to correct." The law gives the Governor no power to correct the return, and he must treat it as right—People v. Head, 25 Ills. 325; The People, &c., v. Hilliard, 29 Ills. 420.

If these authorities be law, this court on this writ cannot go behind the certificate to ascertain whether the petitioner was or was not legally elected to office, or even to ascertain whether there was any election at all, but must decide the case upon the certificate. It is admitted that a judgment in his favor in this proceeding will not establish the right of the petitioner to the office; that question is still open, and can only be determined upon a contest or *quo warranto*. A judgment will only furnish him with the insignia of the office, and nothing more.

Attorney General, for respondent.

Authorities:—Gulick v. New, 14 Ind. 93; Patterson v. Miller et al., 2 Metc. (Ky.) 493; § 3, art. 2, Const. of Mo., R. C. 1865, p. 24; § 4 & 5, art. 2, id. p. 25; § 18, art. 2, id. p. 27; R. C. 1865, §§ 7, 8, 9, 11 & 12 of "An act to provide for the registration of voters," p. 904; § 1 of Supplemental Act, p. 910; R. C. 1865, § 25 & 26, p. 63; § 25, art. 5, of the Const.

WAGNER, Judge, delivered the opinion of the court.

A mandamus is prayed for against the Governor of this State to compel him to issue a commission to the relator as one of the justices of the County Court within and for the county of Callaway. The petitioner avers that the relator was, at the general election held under and by virtue of the provisions of the Constitution and laws of this State, on the Tuesday next after the first Monday in November, A. D. 1866, elected one of the justices of the County Court within and for Callaway county; that on the 9th day of the said month of November, he and the other persons elected cast lots for the terms for which they should hold respectively; that Michael G. Bright drew the term of two years; that George Bartley, the relator, drew the term of four years, leaving the term of six years to Thomas J. Ferguson, the other person elect. The petition further states, that on the 9th day of November, 1866, William Wilson, clerk of the County Court within and for said county, certified to the Governor that Michael G. Bright, George Bartley and Thomas J. Ferguson were duly elected to the offices of justices of the County Court of Callaway county on the 6th day of November, 1866, and that they had cast lots, and Bright had drawn the term of two years, George Bartley the term of four years, and Ferguson the term of six years; which certificate was received by the Governor, and by him returned with an endorsement thereon that he refused to issue the commission to the relator. He also states that he by his agent demanded of the Governor his commission as such justice of the

County Court, and that the Governor refused to deliver the same; and that he did, within fifteen days next preceding the day of election, subscribe and take the constitutional oath known as the "oath of loyalty," and within that time caused the same to be filed in the clerk's office of the County Court of said county.

The Attorney General demurs to the petition, and alleges as grounds of objection, that it does not appear by the allegations of the petition that a registration was had in the county of Callaway as required by law; that the petition does not aver that the relator received the votes of the highest number of the qualified voters for justice of the County Court; that it is not alleged that those voting were qualified voters under the Constitution and laws of this State; that it is not stated in the petition, that those voting for the relator had been ascertained and determined to be qualified voters, under the Constitution of laws of the State, by the board of appeals provided for by law, providing for the registration of voters or otherwise; that it is not shown by the petition that the relator is eligible to the office of justice of the County Court of Callaway county; that it is not alleged in the petition that the relator is not disqualified from holding the said office of County Court justice by reason of any of the provisions contained in the third section of the second article of the Constitution of this State; that this court has no authority or jurisdiction to issue a mandamus against the Governor of this State; that it is not stated that the votes given at said election were examined, cast up, or given to such candidate, as required by the statute in such case made and provided; that it is not averred that the clerk compared the returns of said election publicly in the courthouse of said county of Callaway after having given notice as required by law.

We will first consider whether this court has any jurisdiction in the premises, or authority in a case like this to issue a peremptory mandamus against the Executive of the State. The question was once before this court, and much discussed, but no opinion was given upon it—Pacific R.R. v. The Gov-

ernor, 23 Mo. 353. The exercise of the power has been generally repudiated and disclaimed, but in a very few instances a distinction has been taken, and it has been held that where the law enjoins on the Governor a mere ministerial duty that might as well have been executed by any other person, a mandamus will lie to compel its performance.

In England mandamus is considered a high prerogative writ and will not lie against the King, because absolute perfection is ascribed to him in his political capacity. But that cannot be said of the Executive in a republican government like ours. The Chief Magistrate with us is the representative of the people, derives all his powers and authority from them, and his powers and duties are limited and defined by the Constitution and laws adopted by them.

The Constitution has divided the powers of government into three distinct departments—the legislative, executive, and judicial—and provided for their independent exercise. They are each co-ordinate, and independent of the other, within the sphere of their powers, duties and functions. The Legislature cannot compel, by enactment, this court to enter up a certain judgment, nor can this court coerce the Legislature into the passing of a law. The Governor has no right, nor would he be permitted, to interfere. with the action of this court, nor can the court control him in the exercise of executive duties devolved on him by law. The interference of either branch with the other would imply dependence and inferiority, when by our peculiar frame of government there exists equality and independence. One reason for withholding jurisdiction is, that the exercise of the power would have a direct tendency to bring the executive and judicial departments in conflict, and that the court would have no power to enforce its decrees.

In the case of Marbury v. Madison, 1 Cranch, 49, President Adams, by and with the advice and consent of the Senate, had appointed Mr. Marbury a justice of the peace for the District of Columbia, and had issued his commission and caused the great seal to be affixed to it, but it was not deliv-

ered whilst Mr. Adams remained in office; and when Mr. Jefferson succeeded to the Presidency, he ordered his Secretary of the State, Mr. Madison, to withhold it. Marbury then applied to the Supreme Court for a mandamus against the Secretary to compel him to deliver the commission. The case was most elaborately considered by the learned Chief Justice Marshall, who, after a long train of reasoning, held that the relator had a vested right in the office when the commission was made out and signed, but denied the writ on the ground that the court had no jurisdiction over the case. Mr. Jefferson says, that if the Supreme Court had granted a mandamus in the case, he should have regarded it as trenching on his appropriate sphere of duty; that he had instructed Mr. Madison not to deliver the commission, and that he was prepared, as President of the United States, to maintain his own construction of the Constitution with all the powers of the government, against any control that might be attempted by the Judiciary in effecting what he regarded as the rightful powers of the Executive and Senate within their peculiar departments—4 Jefferson's Works, 75, 317, 372.

Where jurisdiction is clear and unquestionable, this court will not shrink from the performance of its duty, whatever difficulty may stand in the way of executing its judgments or decrees; but where it is doubtful or problematical, we are not to disregard this consideration. Blackstone remarks that " all jurisdiction implies superiority of power; authority to try would be vain and idle without authority to redress; and the sentence of a court would be contemptible unless that court had power to command the execution of it"—1 Shars. Bl. Com. 242.

In the case of Taylor v. The Governor, 1 Ark. 21, the petitioner had been elected to the office of sheriff, and his election certified to by the clerk; the Constitution required that sheriffs should be commissioned by the Governor; and also rendered ineligible any person who was a defaulter. Taylor had been a collector and had not fully accounted for all the

funds that had come into his hands; the Governor refused to commission him, and the court declined to issue a writ of mandamus.

In Hawkins v. Gov. Conway, 1 Pike, 570, the relator had been elected by the Legislature commissioner of public buildings. By the law creating the office of commissioner of public buildings, the Governor was required to commission that officer. The petition stated that upon the 17th day of November, 1838, the applicant transmitted to the Governor of the State the certificate of the Speaker of the House of Representatives, and of the President of the Senate, officially notifying him of his election to fill the office of commissioner of public buildings; and at the same time he addressed a letter to his Excellency, requesting him to grant the commission which he was entitled to by law. The Governor replied to the communication, refusing to issue the commission upon the ground that at the time the election was held there was no law in force authorizing the Legislature to hold an election for the commissioner of public buildings. The court refused to issue the writ, and declared that the Governor of the State was not amenable to the Judiciary for the manner in which he performed, or for his failure to perform, his legal or constitutional duties; and that his acts being political, they must be politically examined in the manner pointed out by the Constitution.

In Georgia (Low v. Towns, 8 Ga. 360) the same doctrine is held, and it is adjudged that for political reasons the chief magistrate of the State cannot be compelled by mandamus to perform any act. So in Illinois, in The People v. Bissell, 19 Ills. 229, it was decided that the Supreme Court had no control over the Governor of the State to compel him to perform any public duty. In the Houston, &c., R.R. Co. v. Randolph, 24 Tex. 317, the court denied the writ against the State Treasurer, acting in his official capacity, and seem to hold that it would not lie against any member of the Executive department except the land commissioner.

In Maine, in the matter of Dennett, petitioner, 32 Me. 508,

the court refused to issue the writ to compel the Governor and Council to proceed to open and cast up votes, which was a statutory duty, and declared that it was an official act, though the Legislature might have devolved it upon any other class of persons instead of the Governor and Council.

In Chamberlain v. Sibley, 4 Minn. 311, the Supreme Court of Minnesota say, " this court will not undertake to compel the Governor of the State to the performance of any duty devolving upon him as the Chief Executive and properly pertaining to such office. In all such matters, the Executive is of necessity independent of the Judiciary."

The case of The State ex rel. &c. v. The Governor, in New Jersey (1 Dutch, 331), arose under the act to regulate elections in that State, which required the Governor should issue a commisssion to the county clerk and surrogate, upon the same evidence as designated in the case of other officers; yet the court refused to issue a mandamus to compel the Governor to act. And in Rhode Island (Mauran v. Smyth, Gov. &c., 5 Am. Law Reg., N. S., 630) it is decided that mandamus does not lie from a State court to the Governor to compel the performance of an official duty, even of a ministerial nature, where such duty is enjoined on him by the Constitution, or where, though imposed by statute, it is of such nature that he alone could perform it.

By the banking law of Ohio, it was provided that if upon the requisite examination, report and statement, it should be found that the company had complied with the provisions of the law, and was lawfully entitled to commence the business of banking, the same should be certified to the Governor, who should, if he was satisfied the law had in all respects been complied with, issue his proclamation, setting forth that such company was authorized to commence and carry on the business of banking at the place designated in such certificate of association. On the presentation of the certificate, the Governor refused to make such proclamation, and, a writ of mandamus being applied for, the court held that in regard to a mere ministerial act which might have

been devolved on any other officer of the State, and affecting a specific private right, the Governor might be made amenable to the compulsory process of the court by mandamus, but declined to issue the writ for other reasons—State ex rel. &c. v. Chase, 5 Ohio, 528.

In North Carolina, the court say that a superior court may issue a writ of mandamus requiring the Governor to do an act merely ministerial—Colton v. Ellis, 7 Jones' Law, 545. And from the report of the cause the writ was ordered, and, we suppose, issued, which is the only case that we have been able to find where the writ was actually granted.

By article 5, section 25, of the Constitution of this State, it is made the duty of the Governor to commission all officers not otherwise provided by law. There is no statutory enactment affecting this constitutional provision; the issuing of a commission is clearly an exercise of political power. But it is insisted that the granting of a commission is a mere ministerial act; but does it follow that it is therefore less an executive act? In one sense of the term, as contradistinguished from judicial duties, all executive duties may be said to be ministerial. We do not consider that the duty of the Executive becomes ministerial because no discretion is left as to the manner of its performance, and that in such case the court may interfere to enforce performance. From such a doctrine it would follow that where the Executive duty was clear, the court would be authorized to interfere; but in cases of doubt, or difficulty, or uncertainty, the Judiciary could afford no remedy, but the responsibility would rest alone on the discretion of the Executive. In many cases no discretion is vested with the Governor; his acts and functions must be performed in strict accordance with specific law, but this court is not on that account invested with power to compel the acts, duties and functions to be performed.

The chief magistrate of the State is required to execute the duties devolving on him by law, by a higher authority than the orders of this court,—by the mandate of the Con-

stitution.  Whatever powers are conferred by the Constitution on the Executive are political powers—whatever duties are enjoined upon him are political duties.  As to all powers conferred or duties enjoined by the Constitution on the Governor, he is entirely independent of the judiciary, and responsible to the people alone at the polls, and liable to impeachment for misdemeanor in office.  If the court can issue a writ of mandamus to compel the Executive to grant a commission which he improperly or from a mistaken view of the law withholds, why may they not award process to compel him to issue writs of election, and to see that the laws are enforced and obeyed?  If the power exists and the jurisdiction is assumed, where is the limit to be placed?  If he is clothed with a political discretion as regards the execution and enforcement of the laws, and many other duties which are enjoined on him, so he is concerning the issuing of commissions.  If the court have power to prescribe the rule of his conduct in one case, they have in the other.  This would make the judges the interpreters of the will of the Executive, and the independence of the Executive department as a co-ordinate branch of the government would be virtually destroyed.

The Governor is bound to see that the laws are faithfully executed, and he has taken an oath to support the Constitution.  In the correct and legitimate performance of his duty, he must inevitably have a discretion in regard to granting commissions ; for, should a person be elected or appointed who was constitutionally ineligible to hold any office of profit or trust, would the Executive be bound to commission him when his ineligibility was clearly and positively proven?  If he is denied the exercise of any discretion in such case, he is made the violator of the Constitution, not its guardian.  Of what avail, then, is his oath of office?  Or, if he has positive and satisfactory evidence that no election has been held in a county, shall he be required to violate the law and issue a commission to a person not elected, because a clerk has

certified to the election ? In granting a commission, the·Governor may go behind the certificate to determine whether an applicant is entitled to receive a commission or not, where the objection to the right of the applicant to receive it rests upon the ground that a constitutional prohibition is interposed—Gulick v. New, 14 Ind. 93. The issuing of a commission is an act by the Executive in his political capacity, and is one of the means employed to enable him to execute the laws and carry on the appropriate functions of the State; and for the manner in which he executes this duty he is in nowise amenable to the Judiciary. The court can no more interfere with executive discretion than the Legislature or Executive can with judicial discretion. The granting of a commission by the Executive is not a mere ministerial duty, but an official act imposed by the Constitution, and is an investiture of authority in the person receiving it. We are of the opinion therefore that mandamus will not lie against the Governor in a case like this.

As to the other points raised by the demurrer, it may be said that it is a familiar rule of pleading that the plaintiff must state in his petition all the facts, specifically, which would be necessary, if true, to entitle him to maintain his action, or to have the relief which he seeks—Biddle v. Boyce, 13 Mo. 532; Curry v. Cabliss et al., 37 Mo. 330. And a party applying for a mandamus must show, not only that he has no other specific remedy, but that he has a specific right. By the application of these rules the petition in this case is fatally defective. It should have contained an averment of every requisite which in law would have been necessary to show that the relator was entitled to the office.

The demurrer is sustained and the mandamus is refused. The other judges concur.