The Chief Justioe
delivered the opinion of the court.
The proposition of the petitioner is that the Judicial Department of the government may control the Executive in reference to an executive duty. He alleges that having been duly certified to be elected to the Congress of the United States, and having presented to the Governor the legal evidence of his election, the Governor refuses to issue to him the executive certificate, under the great seal of the State, which the Legislature, by a long standing statute, has directed him to issue.
The statute is plain that this is a duty of the Governor, as much his dut}r, and as imperatively required, as any other executive act enjoined by law. The power of the Legislature to prescribe the time and manner in which certain duties shall be performed is unquestioned, and the issuing of certificates of election to persons who present the evidence of' their election to Congress is .required by the law of every State of the Union to be performed by the Governor.
The Governor replied to petitioner’s application that he bad "already issued a certificate of election to another person, upon evidence previously presented to him, showing that such person was duly elected, and therefore declined to execute, under the seal of the State, a certificate to the petitioner.
While it is not considered that the issuing of a certificate of election to one person, which it may afterwards appear had been issued upon an erroneous or imperfect canvass of votes, has the legal effect to preclude or relieve the Governor' from the duty of giving a certificate to one who shall appear to have a lawful right to it, nor that the .giving of the latter certificate will cause any embarrassment to or show any inconsistency of action on the part of the Governor, the principal question presented by -the petition has an overshadowing importance and must be determined upon other grounds.
The Executive, Legislative and Judicial Departments of ‘the government are, by express .provisions of the Constitution, each entirely independent of the other in their official action.
This is not a question whether the Governor, in exercising the functions of a trustee of an improvement fund, or an officer of a seminary, or of a board of charities, under the laws of the State, is or is not amenable to the process of this court, or of an inferior court, to control his action as much as such trustee or officer. But it is a question whether the Governor of the State in reference to an executive duty imposed by law, the performance of which is essential to the orderly conduct of the government, is subject to the control and direction of the Judicial Department; or, in other words, whether the Executive Department may be lawfully drawn under the guardianship of this department at the pleasure or in the discretion of this court. If this be so, the Governor, in reference to the time and manner of executing the laws, is also subject to the direction and control of each of the Judges of the Circuit Courts, who, by the Constitution of the State, have the same power as this court to issue and enforce the writ of mandamus.
It has ever been considered by statesmen and jurists that where one has power over another, in a public capacity, the one is the greater and the other the inferior power. (3 Shars. Black., 112.) Where the Governor accepts an office which he may be entitled to exercise ex oficio, the latter is an inferior office, not necessarily connected with the Executive Department of the government. In this case he is liable to be controlled in his official action, not as the Governor, but as the inferior officer into whose action no executive function enters. In the present case the act required to be performed is not the act of such inferior officer, but it is the act of the Governor, as Governor, in his political executive capacity; not merely a discretionary act, it is true, but a duty required under.the legitimate direction of the Legislature, a function of his office, for the neglect or violation of which he is answerable, if at all, to the constitutional power of the House of Assembly before the Senate in its judicial capacity.
In directing the ’Governor to put in exercise his executive power and duty, we should first assume that such power and duty belong to an officer or a department inferior to that of the courts.
If it be asserted that this duty is a ministerial act, and though it may be considered in some sense such an act, it is yet an act of executive authority and power, whether derived from the Constitution or the Statutes. The Constitution says: “he shall see that the laws are faithfully executed.” The Legislature prescribes the laws which he shall .execute. The law requiring him to grant a certificate of election is one of equal binding force as any other law prescribing executive duties, no more and no less. Many of such acts .are perhaps properly designated as ministerial, yet they are none the less executive, emanating from the executive power, enjoined by law.
To assume that this court or the Circuit Courts may direct what acts he shall perform as the Governor of the State, under the laws of the State, or what acts he shall not perform, (for if he, in his capacity of Governor, is amenable to the process of the courts,’ he may be restrained from acting as well as commanded to act,) is to, place the office of Governor in a position inferior to that of a judge of a court of record, and to absorb the power of the “Supreme Executive,” the “the Chief Magistrate, who shall be styled the Governor of Florida.” (Const. Art. V. Sec. 1.)
The. Constitution has placed in the Governor the right “to require the opinion of the Justices of the Supreme Court as to the interpretation of any portion of this Constitution upon any questi'on affecting his executive powers and duties, and the Justices shall render such opinion in *25 -writing.” (Art. V. Sec. 16.) This express provision may well be regarded, according to the common rules of interpreting laws, as fixing the boundary, if it was not before established in the nature of the case, beyond which the courts or judges shall not go in the direction of intermed-dling with the duties of the Governor of the State. To employ the power of the courts in the business of managing the office of Governor and directing him in the exercise of .executive duties,- is to blot out the character given him in the Constitution of “Supreme Executive” and “Chief Magistrate” of the State, and reduced him to the level of a secretary or county clerk. If the courts have this power and command him to obey, we must have power also to imprison him for contempt, when he shall see fit to differ with the courts in reference to his duties and neglect to obey a writ which shall command obedience. Have the courts power thus to deprive the State of its head? If we have a case in which we cnanot punish the disobedience, it results that we had no power to command; the command is idle and nugatory; we can produce no result except the exposure of our own impotence.
The following cases are cited in support of the petition:
Tenn and Coosa R. R. Co. vs. Moore, (36 Ala., 571.) This was an application of the petitioner, a corporation chartered by the Legislature, for a rule against the Governor to show cause why a peremptory mandamus should not be issued commanding him to draw his warrant on the Treasurer or Comptroller under an act of the Legislature for a portion of certain funds claimed by them, and accept a mortgage tendered under the act. The court held that the Governor was in that case the mere ministerial agent of the State in a transaction involving only private rights, and that he was amenable to the writ. There was no executive function involved.
The case of Marbury vs. Madison (1 Cr. 137,) was a mandamus against the Secretary of State requiring the delivery of a commission which had been executed by the President and withhold by the Secretary. It was held that it was a proper case for mandamus. Ho executive act was involved.
The case of Kendall vs. The United States, (12 Peters, 524,) was a mandamus to compel the Postmaster-General to credit certain moneys upon an award under an act of Congress; a mere clerical dot of the Postmaster-General.
The case of Cotton vs. Ellis, Governor, (7 Jones N. C., 545,) was an application by the Adjutant-General for a mandamus to require the Governor to ’ issue a warrant for salary provided by law. A writ was directed to be issued, and'the court remarks: “We do not enter upon the enquiry as to how the writ will be enforced, because we are not allowed to suppose that the question will arise, feeling assured that the sole purpose of the Governor is to obtáin a judicial construction of the statute in question.” The court relies for an authority qpon the cases of Marbury vs. Madison and Kendall vs. The United States.
In Magruder vs. Swann, Governor, the Supreme Court of Maryland, (25 Md., 173,) the petitioner prayed a mandamus commanding the Governor to issue a commission to him as Circuit Judge. The court held that “the Governor of the State, like all other officers in the discharge of mere ministerial duties, is subject to the writ of mandamus, which cannot be denied to a suitor in such a case without acknowledging an authority higher than the law.
In Groome vs. Gwinn (43 Md., 572,) an order pro forma was entered by consent, that.a writ of mandamus be issued directing the issuing of a commission to one who appeared be the election returns to be elected to the office of Attorney-General. By the Constitution of Maryland. the Governor had jurisdiction to hear and determine the case of a contested decision for the office of Attorney-General, and a contest being made in this instance he had declined to issue a commission until the contest should be finally settled, subject, however, to the opinion of the court as to his power, in the absence of legislation regulating it, to examine into the charges affecting the integrity of the election, which question he submitted to the court under this proceeding, and this was the only question presented for the judgment of the court.
In The State ex rel. Moffitt vs. Chase, Governor, (7 Ohio St. R., 372,) the court decides nothing as to this question, but dismissed the petition on other grounds.
In The State ex rel. Whiteman vs. Chase, Governor, (5 Ohio St. R., 528,) an application was made to the Governor to issue his proclamation, as required by the statute, setting forth that a certain banking company was duly authorized to commence and carry on the business of banking, all the provisions of the law having been complied with by the company, and the Governor had refused to comply with the law requiring him to issue such proclamation. The court granted the writ upon the argument drawn from the remark of Chief Justice Marshall in Marbury vs. Madison, that “it is not by the office of the person to whom the ' writ is directed, but the nature of the thing lo be done that the propriety or impropriety of issuing a mandamus is to he determined.” The thing required in this case affected only private rights, having no semblance of political action or affecting public political interests. The court further remarks: “The official act of the Governor in question in regard to issuing the proclamation asked for, is a duty prescribed by statute not necessarily connected with the Supreme Executive power of the State, ministerial in its nature, and a duty which might have been enjoined on some other officer.” (The court might well have added ■that an act of the character referred to might have been as well imposed upon a president of a bank or any other person not a public officer.) The court adds: “With a clear and accurate conception of his own duty, the Governor does not presume the exercise of a discretion, in regard to the question in this case, which would-make his determination final and conclusive; on the contrary, he concedes the authority of the judiciary over the question.”
In Harpending, vs. Haight, Governor, (39 Cal., 189,) the Supreme Court (by a majority of the judges,) granted a mandamus commanding the Governor to cause to be authenticated as a statute a certain bill in his possession which had passed both houses of the Legislature and was not returned to either house with his objections during its session just expired, whereby the bill by the Constitution had become a law, ¿he Governor having prepared a veto message and sent it to the Legislature a'few minutes after it had adjourned, which message and bill were returned by the Secretary of the Governor' to the Executive office, where they remained. The Governor and the petitioner signed and filed a stipulation to present the case to the court, and agreed “that if the court are of the opinion that said bill , did become a law, a peremptory mandate may issue commanding the respondents to cause said bill to he authenticated,” as provided by a statute.
" The Governor, however, filed an exception to the jurisdiction of the court, because “the functions of the Executive, in conjunction with the Legislature as part of the lawmaking power, are not the subject of mandamus.” The court granted the writ upon the ground that the Governor had no official act to perform in the premises, and that like any other officer or person, he had merely the possession of a statute which belonged in the office of the Secretary of • State, and the Governor had no longer any executive control of the act.
The Supreme Court of Minnesota (4 Minn., 309,) refused the writ against the Governor to deliver to the petitioner, as the asignee of the Minnesota and Pacific Railroad Com *26 pany, twenty-five thousand dollars in Minnesota State railroad bonds,, pursuant to an amendment to the Constitution. The court held that the act required to be done was purely ministerial, not necessarily pertaining to the duties of the Executive office if the duty was imposed by a statute, in which case, as the Governor was a mere agent created by the State to further private interests, he would be subject to the power of the court; but as the act was one imposed by the Constitution of the State, they did “not feel authorized to hold that it does not pertain to the office of the Chief Executive.” We refrain from commenting upon this latter conclusion. The same court, (in 19 Minn.,) as we shall see, reverses the rule of this decision as to the power of the court to interfere with a decision of the Governor in respect to his duties.
The State vs. Osborn, Governor, (14 Kan., 416,) presents a case where the Governor refused to issue a patent for lands claimed under a purchase made under an act of the Legislature providing for the sale pf certain lands, in which no executive or political feature 'was involved. This case has little bearing upon the question at bar.
The case from. Nevada (4 Nev. 241,) was one involving only the question whether the relator had taken the proper steps to entitle him to a patent to public lands. “The proceeding was an amicable one, the Governor only hesitating to grant the patent because of a doubt in his mind as to whether those steps had been taken which would authorize him to sign and deliver the patent to the relator.” The court decided merely that the petitioner was entitled to the patent, and granted the writ. It was a case of mere agency in the sale of lands.
We now proceed to examine the cases at hand which bear against the exercise of the power of this court over the authority and duty of the Governor.
The Supreme Court of •Pennsylvania, in a recent case, (the appeal of Hartranft, Governor, January, 1878,) says: “If we once begin to shift the Supreme Executive power “from him, upon whom the Constitution has conferred it, “to the Judiciary, we may as well to the work thoroughly, “and constitute the courts the absolute guardians and directors of all-governmental functions whatever. We had “better, at the outstart, recognize the fact that the Executive Department is a co-ordinate branch of the “government, with power to judge what should or “should not be done within its own department, and “what of its own doings and- communications should or “should not be kept secret, and that with it, in the exercise of these constitutional powers, the courts have no “more right to interfere, than has the Executive, under “like conditions, to interfere with the courts. In the case of “Oliver vs. Warmouth, (22 La. Ann., 1,) it was held, that “under the division of powers as laid down in the Federal and State Constitutions, the Judiciary Department ‘fiias no jurisdiction over, or right to interfere with, the “independent action of the Chief Executive in the functions of his Office, even though the act .he is required to “perform be purely ministerial. * * * ^ N'o case “could more forcibly exhibit the extreme reluctance of “courts to interfere with the functions of the Supreme Executive, for the 'hypothesis put is the refusal of the Gov*“ernor to perform a duly cast upon him by law, of a character strictly ministerial. We think, however, that the “grounds upon which this decision stands is substantial; “for, as the learned Justice well argues, the difficulty “arises in the attempt to establish a distinction between “ministerial and discretionary acts as applied to the Governor, and then to conclude that the former may be enforced by judicial decree. It is objected, however, that the “doctrine is unsound in this, that it gives to the Judiciary “the large discretion of, determining the character of all “acts to be performed by the Chief Executive; this would “infringe his'right to use his own discretion in determining “the very same question; that he must necessarily have the “unconditional power of -deciding what acts his duties require him to perform, otherwise his functions are “trammeled, and the executive branch of the governmem. “is made subject to the Judiciary.”
This is the latest case reported upon this question.
In the case of The State vs. The Governor, (39 Mo., 388,) it is said that the issuing of a commission is clearly a political power. “But it is insisted that the granting of a “commission is a mere ministerial act; but does it follow “that it is therefore less an executive act? In one sense of “the term, as contradistinguished from judicial duties, all “executive duties may be said to be ministerial. We do “not consider that the duty of the executive becomes “ministerial because no discretion is left as to the manner of “its performance, and that in such case the court may in-feriere to enforce performance.”
The Supreme Court of Minnesota in Rice et al vs. The Governor (19 Minn., 103,) in a case where an application was made for a mandamus a'gainst the Governor, commanding him to execute and deliver to the petitioner a deed of certain lands, under the provisions of certain acts of the Legislature, holds that neither of the departments of the government is responsible to the other for the performance of its duties, so neither can enforce the performance of the duties of the other. And admitting for the sake of argument that the duty in the case is purely ministerial, the court saw no good reason for the distinction thus drawn between ministerial and other duties. The Constitutional provisions making the departments distinct and independent, are broad and general and recognize no such distinction. This decision reverses the rule adopted in 4th Minn, 309, elsewhere referred to.
In (8 Ga. R., 360,) The State vs. Towns, Governor, it it is held that however clear it may be as a general legal proposition, that when a mere ministerial act.-is -required to be performed by law on the part of an executive officer, and individual rights depend 'on the performance of that act, the proper tribunals of the country have jurisdiction to compel its performance; yet for political reasons alone, the Chief Magistrate of the- State cannot be compelled by mandamus to perform such ministerial act. That was upon an application for a mandamus to compel the Governor to commission one claiming to have been elected clerk of a court. The same court (7 Geo., 473, 483,) intimated that the writ ought, in such case, to issue.
In The State vs. Warmouth, (22 La. Ann. R. 1,) an application for a mandamus to compel the Governor to issue certain bonds of the State, authorized and required by-law to be issued by the Governor in payment for certain improvements, the court denied the writ, remarking that it thinks’the doctrine that a distinction is to be taken between acts -purely and simply ministerial, and acts which the Governor has a discretion to perform or not, is objectionable in this, that it accords to the Judiciary the large discretion of determining the character of all acts to be performed by the chief executive officer as being ministerial or otherwise. This would infringe the right of the Executive to use discretion in determining the same question. He must be presumed to have this discretion, and the right of deciding what acts his duties require him to perform, otherwise his functions would .be trammeled, and the executive branch of the government made subservient, in an important feature, to the judiciary.
In Dennett, petitioner, (32 Minn., 508,) a mandamus was refused to be issued directing the Governor and council to declare the petitioner elected to an*, office and give him a certificate, and says: “That department is responsible for .the *27 correct performance of its duties in the manner prescribed by the Constitution, but is not responsible to the Judicial Department. The argument that it cannot properly be regarded as an official duty of the Executive Department, because its performance might by law have been intrusted to other persons, is not regarded as sound. It does not follow that an act cannot be the official act of a department of the government because other persons might lawfully have performed the same acts, if performance had been by law intrusted to them.” •
In Hawkins vs. The Governor, (1 Ark., 570,) the court, by similar reasoning, held that it could not grant a mandamus to compel the Governor to issue a commission to petitioner as Commissioner of Public Buildings, to which he was elected by the Legislature.
In The People vs. Bissell, Governor, (19 Ill., 229,) a mandamus was prayed to compel the Governor to issue certain bonds under an act of the Legislature. It was held that the court had no control over the Governor to compel him to perform any public duty pertaining to his office, and “remitted him to the high tribunal of his own conscience.”
In The People vs. Yates, Governor, (40 Ill., 126,) it was held that the writ of mandamus would not lie against the Governor of the State, to compel him to deposit in the office of the Secretary of State a bill which had passed the General Assembly and been placed in the hands of the Governor for his consideration, and which, it is alleged, had not been • returned to the proper house within the time limited by the Constitution with his objections. (This is directly in • conflict with the case in 39 Cal., elsewhere referred to.)
It was held in State vs. Fletcher, Governor, (39 Mo., 388,) that the Supreme Court had no jurisdiction to issue a writ of mandamus to the Governor of the State to compel him to issue a commission to an officer, this duty of the Governor being ^political, and not merely ministerial, and the court remarks that if the court have power to prescribe the rule of his conduct in one case they have in the other. This would make the judges the interpreters of the will of the executive, and the independence of the executive department as a co-ordinate branch of the government would virtually be destroyed.
The same question was before the Supreme Court of New Jersey in the State vs. The Governor, (1 Dutcher, 331,) and the court held that it had no power to issue a mandamus to the Governor, either to compel the excution of any duty enjoined on the executive by the Constitution, or to direct the manner of its performance. “If by ministerial duties are meant duties performed by one acting .under superior authority, or not with unlimited control, none of the duties of the executive are ministerial.”
Upon this point the Supreme Court of Rhode Island, in Mauran vs. Smith, (8 R. I., 192,) remarks that if it be true that the Governor may be controlled “to the extent of his ministerial duties, the executive is not the co-ordinate of the judiciary, but subordinate to it, and the line of separation between the two departments is, to that extent, obliterated.”
The case of the People vs. The Governor, (29 Mich., 320,) goes quite as far as any that have been found among the reports. The conclusion of the court is that where a duty is devolved upon the chief executive of the State, rather than upon an inferior officer, it will he presumed to have been done because his superior judgment, discretion and sense of responsibility were confided in for a more accurate, faithful and discreet performance than could be relied on if the duty were upon an officer chosen for inferior duties; and such a duty can seldom be considered as ministerial. And this whether the duty is imposed by the Constitution or bv a statute. •
Judge Cooley, in delivering the opinion of the court in that case, remarks: “When duties are imposed upon the Governor, whatever be their grade, importance or nature, we doubt the right of the courts to say that this or that dut^> might properly have been imposed upon a Secretary of State, or a slieriif of a county, or other inferior officer, and' that inasmuch as in case it had been so imposed, there would have been a judicial remedy for neglect to perform it, therefore there must be the like remedy when the Governor himself is guilty of a similar neglect.
“The apportionment of power, authority and duty to the Governor is made either by the people in the Constitution, or by the Legislature in making laws under it, and the courts, when the apportionment has been made, would be presumptuous if they should assume to declare that a particular duty assigned to the Governor is not essentially executive, but is of such inferior grade and importance as properly to' pertain to some inferior officer, and consequently, for the purpose of their jurisdiction, the courts may treat it precisely as if an inferior officer had been required to perform it. To do this-would be not only to question the wisdom of the Constitution or the law, but also to assert a right to make the Governor the passive instrument of the judiciary in executing its mandates within the sphere of his own duties. Were the courts to go so far, they would break away from those checks and balances of government which were meant to be checks of co-operation, and not of antagonism or mastery, and would concentrate in their own hands something, at least, of the power which the people, either directly or by the action of their representatives, decided to intrust to the other departments of the government.”
Our conclusion in the present case, upon principle and upon authority, is that the Governor of the State of Florida cannot be commanded by the courts to perform any act which may be required of him by a law of the State relating to the executive office, or any duty which he may be required to perform of a political nature, even though private rights may be involved. It is not necessary to say that this rule does not extend to a duty or office conferred upon the governor ex-officio, as that of a mere trustee of a fund or properly, or a director or corporator in the execu-cution of a franchise or other private duty which might have been as well imposed upon any other person, and which office is conferred upon the person occupying the office of Governor, for the purpose of securing the unbroken occupancy of such inferior office or franchise.
In the case referred to from 25 Maryland, 173, before cited, the writ of mandamus was awarded against the Governor, on thp ground that it could not be denied in that case “without acknowledging an authority higher Hum the Jaw”
I can find no better language with which to confront this terse apothegm than that found in the opinion of presiding Judge Knott, in Grier vs. Taylor, Governor, in 1827, (4 McCord, S. C., 210.) “Neither department,” he says, “can control the other in the exercise of its legitimate functions. To the judges belongs the power of expounding the laws; and although in the discharge of that duty they may render a law inoperative by declaring it unconstitutional, it does not arise from any supremacy which the judiciary possesses over the Legislature, but From the supremacy of THE CONSTITUTION OVER BOTH.”
The argument that the writ of 'the court cannot be enforced against the Governor is, that as commander-in-chief of the physical forces of the State, he would not aid the court, but would probably resist it in any attempt to coerce the executive power into subjection to another department. “The sentence of the court in such case would be contemptible.” (1 Shars. Black. Com., 242.)
The petitioner suggests that this would be equally appli *28 cable if the Governor was charged with the perpetration, of a crime, and he should resist the process of the courts by means of the military forces of which he was the head. We do not recognize the applicability of the case. It is not a case of personal immunity from arrest for a breach of the criminal laws, and we cannot anticipate the case of a personal resistance or rebellion by the Governor against the State, and against the ordinary enforcement of the laws and the .recognized process .of the courts. The question now here is whether this court will control the action of the Governor in respect to a political duty of his office, and this we refuse to do.
The writ of mandamus is refused.