THE STATE ex rel. ELLIOTT W. MAJOR v. GEORGE H. SHIELDS, Judge, and NAT GOLDSTEIN.

In Banc, December 1, 1917.

1. **DAMAGES:** Governor's Refusal to Issue Commission. A court has no authority to entertain or determine a proceeding which has for its object the assessment of damages against the Governor of the State for failing or refusing to issue a commission to an individual elected to an office.

2. **GOVERNOR'S EXECUTIVE DUTIES:** Political: Controlled by Mandamus or Action for Damages. The power conferred upon the Governor to issue a commission to one elected to office is not ministerial, but political, and its exercise cannot be compelled by mandamus or otherwise controlled, and in consequence no action against him for damages for failure or refusal to issue the commission can be maintained.

Prohibition.

WRIT GRANTED.

*Charles G. Revelle* for relator.

(1) Our form of State government is divided into three separate and distinct departments—the executive, legislative and judicial—and each is exclusively confided to a separate magistracy. Article 3 of Mo. Constitution. (2) The legislative power is vested in the General Assembly and in the people, and the exercise thereof is not subject to judicial arrest or control. Art. 4, Constitution; Pitman v. Drabelle, 267 Mo. 78; State ex rel. v. Gates, 190 Mo. 555. (3) The judicial power of the State is vested in the courts, and this power cannot be interfered with by the legislative or executive departments. Constitution, art. 6, sec. 1; State ex rel. v. Equitable Loan, 142 Mo. 325; State ex rel. v. Locker, 266 Mo. 384; Foster v. State, 41 Mo. 61; Vail v. Dinning, 44 Mo. 210. (4) No civil action will lie against a judge of a court for a judicial act or a member of the Legislature for a legislative act, even

though it be alleged that the act was done maliciously. Bradley v. Fisher, 80 U. S. 357; Spalding v. Vilas, 161 U. S. 494; Governor v. State, 127 Ind. 588; Larkin v. Newman, 19 Wis. 82; People v. Hill, 13 N. Y. Supp. 186; 15 Am. & Eng. Ency. Law, p. 1068. (5) In exactly the same degree that the judicial power is vested in the courts and the legislative power in the General Assembly and the people, the executive power is vested in the Governor of the State. Sec. 4, art. 5, Mo. Constitution. (6) Every official act performed by the Governor of the State is executive as distinguished from ministerial. State ex rel. v. Stone, 120 Mo. 428; State ex rel. v. Governor, 39 Mo. 398. (7) It is the constitutional duty of the Governor to take care that the laws are faithfully executed, and in doing so his acts are always discretionary. Sec. 6, art. 5, Mo. Constitution. (8) The courts are entirely without power to directly or indirectly control the official acts of the Governor, whether through remedial writs or civil actions. State ex rel. v. Stone, 120 Mo. 428; Governor v. State, 127 Ind. 588; People v. Governor, 29 Mich. 320; Bradley v. Fisher, 80 U. S. 357; Spalding v. Vilas, 161 U. S. 494; Larkin v. Newman, 19 Wis. 82; People v. Hill, 13 N. Y. Supp. 186; 15 Am. & Eng. Ency. Law, p. 1068; 6 Am. & Eng. Ency. Law, pp. 1006, 1014; 14 Am. & Eng. Ency. Law, p. 1106.

*Spencer & Donnell* for respondent.

(1) On the death of Charles R. Graves, in June, 1916, the office of circuit clerk of the city of St. Louis, which he held, became vacant, and the Governor appointed James Hagerman to fill this vacancy. This appointment, under the law, was until the next general election. Sec. 2674, R. S. 1909; State ex rel. v. Amick, 247 Mo. 271; State ex rel. v. Perkins, 139 Mo. 115. (2) At the general election of 1916 respondent, Nat Goldstein, was elected circuit clerk for city of St. Louis for the unexpired term of Charles R. Graves, deceased, and was entitled to the office immediately after this election, i. e., so soon as his certificate of election issued. (3) The certificate of election was

promptly issued to Mr. Goldstein after the general election in November, 1916, and the results of the election were certified, as provided by law, to the Secretary of State, and it then became the duty of the Governor to issue a commission to Mr. Goldstein. Constitution, art. 5, sec. 23; Sec. 2673, R. S. 1909. (4) The duty of the Governor to thus issue the commission was purely ministerial. He had no power to investigate or decide the result of the election. The commission was for the unexpired term of Chas. R. Graves. Every question, either concerning the election or the term of office or the duties thereof, were questions for the courts, not for the Executive. "The questions involved are legal questions." State ex rel. v. Amick, 247 Mo. 294. "The Governor, where he issues a commission for an elective office, is simply performing a ministerial duty, in which he must necessarily be governed by the returns as they appear in the proper office at the seat of government." State ex rel. v. Vail, 53 Mo. 112; State ex rel. v. Draper, 48 Mo. 215; State ex rel. v. Steers, 44 Mo. 227. (5) A commission was necessary because required by law. Secs. 2673, 10197, R. S. 1909. (6) The Governor, without warrant of law, and for personal and party reasons, deliberately and with malice, denied to respondent his legal right, and deprived him of his salary, and wantonly kept him from the office to which he had been elected by the people. (7) A Governor who wilfully and maliciously injures another is liable for the damage he does. "Where the duties of the office [Governor] are ministerial, any individual injured by the official acts of such officer may resort to the courts for redress." Drucker v. Saloman, 21 Wis. 629; Marbury v. Madison, 1 Cranch. 137; Moyer v. Peabody, 212 U. S. 78; 12 R. C. L. 1009. (8) Judges are responsible for wilful illegal misconduct in connection with ministerial duties. 23 Cyc. 538, and 571 and note; State ex rel. v. Graves, 8 Mo. 151; Knox v. Hunolt, 110 Mo. 75; Pike v. Megoun, 44 Mo. 496.

WALKER, J.—This is a proceeding by prohibition to prevent a circuit judge from hearing and determining a suit the purpose of which is to mulct a former Governor of this State in damages for his failure and refusal to

issue a commission to one elected to the office of clerk of the circuit court of the city of St. Louis.

Upon the filing of the suit for damages the defendant therein, who is the relator here, interposed a demurrer based on the ground that the petition did not state a cause of action. This was overruled; whereupon relator petitioned this court for a writ of prohibition, alleging as a moving reason therefor, as in his demurrer below, that the petition did not state a cause of action and hence no jurisdiction existed in the trial court to hear and determine the case. Upon the issuance of a preliminary order the respondent made return thereto, setting up much extraneous and wholly irrelevant matter. The material parts of this return to which we will alone direct attention are that the plaintiff in the damage suit had at the preceding election in November, 1916, been elected to fill out an unexpired term as clerk of the circuit court of the city of St. Louis and, as alleged in his petition, being otherwise qualified, had—stating his acts in detail—complied with the law entitling him to enter upon the discharge of the duties of said office upon the issuance to him of a commission by the Governor of the State; that the latter had as Governor refused to issue said commission, and plaintiff had thereupon instituted in the circuit court of the city of St. Louis in November, 1916, a proceeding by *quo warranto* against his predecessor, the then incumbent of said office as clerk of the circuit court, who had been appointed as such by the Governor until the general election in November, 1916; and that the said proceeding had been finally determined in favor of the plaintiff and that he had again applied to the Governor for the issuance of a commission, which had been refused until a short time before January 1, 1917, when said commission had been issued and he had entered upon the discharge of the duties of the office; that he was damaged by reason of the refusal of the Governor to issue said commission which would have entitled him to take charge of the office immediately upon his election in November, 1916, instead of his right

thereto being deferred until January, 1917. These facts, if not explicitly pleaded are to be gleaned from the record before us as the reasons urged by the respondent, why the peremptory writ should not issue.

Relator's motion to strike out parts of this return we have, in effect, sustained by epitomizing only such portions of same as constitute a proper pleading in a case of this character. Thus freed of matters foreign to the issue, there is presented the question of jurisdiction; or, concretely stated, has a court authority to entertain and determine a proceeding which has for its purpose the assessment of damages against a Governor for failing or refusing to issue a commission to an individual elected to an office?

A determination of this question involves a discussion of the triune nature of our government; and as a consequence the relation of each of the departments, thus created, to the others. The origin of this form of government, diverting as a review of same might prove, is pertinent here only so far as same is necessary to an elucidation of the matter at issue. It will suffice to say that the germinal idea of a government of three coordinate branches is first found recorded in Aristotle's Politics where it said that "in every polity there are three departments; first, the assembly; second, the officers, including their powers and appointment; and third, the judging or judicial department." The wisdom of this classification and its appropriate application in the framing of the laws of a free government has been illustrated by its incorporation into our national organic law and subsequently into the constitutions of the several states. The central idea in the creation of a government of this form is that the powers created shall be coordinate in their relations towards each other; and while supreme within their respective orbits they shall so move as not to invade the plane of activity of the others. Thus regulated friction in the conduct of public affairs is avoided and that harmony promoted which is most conducive to the stability of government and, as a consequence, to the welfare of the people. A contra-

riety of opinion is found in the rulings of courts of last resort in different jurisdictions as to what constitutes an invasion by one of these governmental powers of another. This is notably true as to the power of the courts to compel the Governor by a remedial writ to perform an official duty. A compilation of the earlier cases on this subject will be found in State ex rel. Robb v. Stone, 120 Mo. l. c. 434, 436, in a well considered opinion by SHERWOOD, J., and in the notes to a later case (State ex rel. Irvine 1. Brooks, 6 L. R. A. [N. S.] [Wyo.] 750) in another jurisdiction. These variant rulings while assigning somewhat different reasons for the conclusions reached, are based primarily upon the construction placed upon the character of the duty sought to be controlled; the right to the writ being limited to the control of such duties of the Governor as are denominated ministerial. What is meant by ministerial duty, as applied to judicial action, is usually not difficult of determination; but it is otherwise when it is attempted to thus classify executive duties. They are usually clearly defined and the power of their performance confided exclusively to the Governor. In their exercise a degree of discretion is necessarily required. They demand, therefore, no interpretation and are not subject to judicial control. If control is attempted to be exercised, under such a state of facts, it cannot prove otherwise than an invasion of power and hence contrary to the spirit and purpose of the law separating the government into three branches and defining the powers of each. But we are not left to abstract reasoning to determine that power thus conferred upon the Governor is not ministerial. In State ex rel. Bartley v. Governor, 39 Mo. 388, this court declared, under a state of facts parallel in all of their material features to those of the case at bar, that power conferred upon the Governor to issue a commission to one elected to an office is political and not ministerial in its character, and as such, aside from any other reason would not authorize the court in granting a writ to control the Governor's action. In addition the court puts its refusal to so act upon a broader ground;

namely, that the Governor's duties devolve on him by law, under a higher authority than the order of a court, i. e., the mandate of the Constitution. The duties thus conferred are political and his acts are entirely independent of the judiciary and for a failure to perform same he is responsible to the people alone, his liability being that of impeachment. If this court can issue a writ of mandamus to compel the Governor to grant this commission which he improperly or from a mistaken view of the law withheld, by this course of reasoning he may be required by the court to see that the laws are enforced and obeyed. The danger of the assumption of this fact is dwelt upon on the part of the court in that if exercised in one case and a precedent therefor established, no limit thereto can be defined. If the Governor is clothed with political discretion in regard to the execution and enforcement of the law and other duties enjoined on him, so he is concerning the issuance of commissions to those elected to office; and the court has no greater power to prescribe the rule of his conduct in one case than in the other. "This would," says the court, "make the judges the interpreters of the will of the executive, and the independence of the executive department as a coordinate branch of the government would be virtually destroyed."

In re Woodson, 58 Mo. l. c. 372, which was in response to an inquiry submitted by the then Governor to the judges of the Supreme Court, under the authority of a law then in force, the court said: "It is well settled that in issuing a commission the Governor acts in a political or executive capacity, and he alone can judge whether the power should be exercised or not, and the courts can neither compel nor interfere with him in the exercise of this right."

In State ex rel. Robb v. Stone, supra, the court announces the doctrine of non-interference even more broadly than in the two preceding cases, it being held that a mandamus would not issue to the Governor to compel the performance of any duty pertaining to his office, whether political or merely ministerial, commanded

either by the Constitution or the statutes; and, says the court: While it was not expressly so decided in State ex rel. v. Governor, 39 Mo. 388, it was clearly intimated that in the acts authorized by law to be performed by the Governor "there was really no valid distinction between a political and ministerial act when considered with reference to the issuance of a mandamus against him."

It remains to be considered to what extent the rule as here announced as to judicial non-interference with executive action may be considered persuasive or as a precedent in determining the matter at issue. A mandamus proceeding simply seeks to compel action. A denial of the right when directed against the Governor, upon the comprehensive grounds stated in the cases discussed, means simply that as thus sought to be invoked, the right to the writ does not exist. These rulings therefore accord full freedom of action to the Governor in all matters pertaining to the discharge of the duties of his office. If freedom of executive action is thus assured, can it be said that the failure of the Governor to act in a given case will render him liable for such inaction to an individual who claims thereby to have been damaged. To so hold would involve an absurdity, in that while according the Governor freedom of action we would nevertheless hold him liable at the behest of an individual for non-action. The immunity to which the Governor is entitled, is as applicable in one class of cases as in the other. The complete absence of the statement of a cause of action, and the fact, evident from the averments in the petition, that no cause of action exists, gives the trial court no authority to proceed in the premises, from which it follows that the writ prayed for should be made absolute, and it is so ordered. All concur.