THE STATE *ex rel.* ROBB v. STONE, *Governor.*

Division Two, February 27, 1894.

1. **Mandamus**: GOVERNOR. *Mandamus* will not lie to compel the governor of the state to perform any duty pertaining to his office, ministerial or political, and whether commanded by the constitution or by some law passed on the subject.

2. ——: ——. Nor would the foregoing be changed by the fact of the governor voluntarily submitting himself to the jurisdiction of the court.

*Mandamus.*

WRIT DENIED.

*Silver & Brown* for relator.

(1) The following states have ruled through their supreme courts that the governor is amenable to *mandamus* as to a mere ministerial duty:    Alabama, California,    Colorado,    Indiana,    Louisiana,    Maryland, Montana, Nevada, North Carolina and Ohio; eleven in number.    *Railroad v. Moore*, 36 Ala. 371; *Middleton v. Low*, 30 Cal. 596; *Greenwood, etc., v. Routt*, 17 Col. 156; *Gray v. State*, 72 Ind. 567; *Magruder v. Swann*, 25 Md. 173; *Groome v. Gwinn*, 43 Md. 572; *Chumasero v. Potts*, 2 Mont. 242; *State, etc., v. Blasdel, Governor*, 4 Nev. 241; *State, etc., v. Governor*, 5 Ohio St. 528; *State, etc., v. Nicholls*, 7 S. Rep. (La.) 738. Other states have, it is true, ruled differently, such as Arkansas, Florida, Illinois and Minnesota.    *Hawkins v. Governor*, 1 Ark. 571; *State v. Drew*, 17 Fla. 67; *People v. Bissell*, 19 Ill. 229; *Rice v. Austin*, 19 Minn. 103.    But the best considered cases and the best reasoning are with the cases first above mentioned. (2) In the case of *People v. Bissell*, 19 Ill. 227, a leading case against the right to *mandamus* the governor on even ministerial matters, it was distinctly ruled that, with the consent of the governor, the court might rightly adjudicate the questions submitted to it, but that it did not possess the right to exercise coercive powers over him.    See, also, *Railroad v. Price, Governor*, 23 Mo. 360.    In this last case, jurisdiction of this court, where the governor does not insist on his

exemption, was distinctly recognized and acted on. In the matter now before the court, we understand that Governor Stone does not desire to interpose any objection based on his nonliability to *mandamus* proceedings; anyhow, it will be time enough to consider this matter when he claims such exemption in his return to the alternative writ; it was so ruled in 23 Mo. 353. (3) In *Marbury v. Madison*, 1 Cranch, 137, p. 165, Chief Justice MARSHALL, after declaring that the acts of the head of one of the executive departments in matters resting in executive discretion can never be examinable by the courts, uses this language: "But when the legislature proceeds to impose on that officer other duties, when he is directed peremptorily to perform certain acts, when the rights of individuals are dependent on these acts, he is so far the officer of the law, is amenable to the law for his conduct and can not at his discretion sport away the vested rights of others." See, also, *Kendall v. United States*, 12 Pet. 524; *State, etc., v. Governor*, 39 Mo. 388; *State ex rel. v. Vail*, 53 Mo. 113. (4) The duty required of the governor in this case is a ministerial one and properly enforceable by *mandamus*. *Mansfield v. Fuller*, 50 Mo. 339. The relator has a vested right in the fruits of his contract and the governor's duty is in the nature of that of the auditor in auditing a claim against the state. A ministerial duty "is a simple, definite duty arising under conditions admitted or proved to exist and imposed by law." *State of Miss. v. Johnson*, 4 Wall. 494.

*R. F. Walker*, Attorney General, for respondent.

SHERWOOD, J.—The relator in this case, Edward J. Robb, was employed by David R. Francis, then governor of the state, as counsel on behalf of the state in the case of *The State of Missouri v. Louis Ulrich*, at

that time pending in the supreme court of the United States. This employment had its origin in an act of the thirty-sixth general assembly, approved March 25, 1891, which authorized and empowered such employment to be made, at and for a sum not exceeding the sum of $500; all disbursements out of the fund thus created to be made upon the order of the governor. By an act approved March 31, 1893, the general assembly reappropriated said amount for the purpose aforesaid, which act provided that all disbursements under this section should be made by order of the governor, and that counsel fees should be paid "only on determination of suit."

The sum which David R. Francis, then governor, agreed to pay relator for his services as counsel in that cause was the said sum of $500, in consideration of which sum relator agreed to represent the state as counsel in said cause until the determination thereof. After thus entering into such contract, relator duly performed all of its conditions on his part and discharged his duty as counsel for the state thereunder, until the final determination of said cause, which resulted in Ulrich dismissing his appeal therein on the fifteenth of May, 1893.

No part of the amount appropriated by the general assembly for the payment of counsel fees and agreed to be paid relator, has ever been paid him. On the twenty-second of August, 1893, relator presented his said contract with, and claim against, the state of Missouri to Governor Wm. J. Stone, exhibiting to him at the same time all necessary papers, etc., etc., and asked that said sum of $500 be paid to relator, but which sum said governor neglected and refused to order to be paid to relator. Upon these facts thus presented in the petition, relator prays that an alternative writ of *mandamus* issue directed to the governor,

commanding him, etc., etc. Waiving the issuance of the alternative writ, the governor has entered his appearance herein, and by his counsel has filed a general demurrer to relator's petition, to the effect that the petition does not state facts sufficient, etc.

As the petition states a good contract with, and cause of action against, the state, and the demurrer admits the allegations of the petition to be true, the only question for determination is, whether the respondent is amenable to the process of this court in a case of this sort; in other words, whether this court has *jurisdiction* to entertain this application made by relator. The inquiry thus suggested brings into prominence article 3 of our constitution by which it is provided that: "The powers of government shall be divided into three distinct departments—the legislative, executive and judicial—each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted."

In this instance we, constituting a portion of the judicial department of the government, are called upon to exercise, or what amounts to the same thing, to *control* the exercise of powers belonging exclusively to the *executive* department of that government. To such action on our part the organic law interposes an insuperable barrier. In addition to the provisions of the organic law quoted, that instrument also declares that: "The supreme executive power shall be vested in a chief magistrate, who shall be styled 'the governor of the state of Missouri'." Const., art. 5, sec. 4. Section 6 of the same article requires that "the governor shall take care that the laws are  *  *  *  faithfully

executed." Of the same article, section 1 provides that the governor "shall perform such duties as may be prescribed by law." And section 6 of article 14 as a prerequisite to his entering on the duties of his office, prescribes that he "take and subscribe an oath to support the constitution of the United States and of this state, and to demean himself faithfully in office."

Under these plain and comprehensive provisions, it must be apparent that any duty *"prescribed by law"* for the governor to perform, is as much part and parcel of his *executive* duties as though made so by the most solemn language of the constitution itself.

Conceding the validity of any given law, the fact that the duties which it prescribes are merely *ministerial* can not take them out of the domain of *executive* duties nor make them any the less those which "properly belong" to the executive department of the government. And should we by our process be able to compel the performance by the governor of such duties, we would in effect and to all intents and purposes *be performing those duties ourselves;* for there can be no substantial distinction drawn between our assumption of duties pertaining to another department of the government, and our intervention resulting in the compulsory performance of such duties; *qui facit per alium,* etc.

Nor does the fact that any duty which the law prescribes for the governor to perform, *might* have been assigned to some other officer *who would have been* amenable to the process of this court, alter the conclusion to be reached or vary the result; for the fact would still remain that the act required to be done was nevertheless an *official* one, assigned by the legislative department of the government to be performed by the executive department, *eo nomine* by the *governor* and by him alone and therefore if he is not bound to obey the law in question *as governor, he is not bound to act at all,*

since he only assumed to obey the laws in his *gubernatorial capacity* and not otherwise or elsewhere. See *Rice v. Austin, infra.* So that we should manifestly be trenching on the exclusive powers of *two* separate magistracies of the government, should we assume to exercise jurisdiction in this case.

Abundant authority establishes the position here taken that *mandamus* will not issue to the governor to compel the performance of *any* duty pertaining to his office, whether political or merely ministerial; whether commanded by the constitution or by some law passed on the subject. *People ex rel. v. Governor*, 29 Mich. 320; *Hawkins v. Governor*, 1 Ark. 570; *State ex rel. v. Warmoth*, 22 La. Ann. 1; *State ex rel. v. Warmoth*, 24 La. Ann. 351; *State ex rel. v. Board*, 42 La. Ann. 647; *Mauran v. Governor*, 8 R. I. 192; *Rice v. Austin*, 19 Minn. 103; *Dennett, Petitioner*, 32 Me. 508; *Railroad v. Lowry*, 61 Miss. 102; *State v. Governor*, 25 N. J. L. 331; *State ex rel. v. Drew*, 17 Fla. 67; *Hovey v. State ex rel.*, 127 Ind. 588 (which distinguishes or virtually overrules *Gray v. State ex rel.*, 72 Ind. 567); *People ex rel. v. Bissell*, 19 Ill. 229; *People ex rel. v. Yates*, 40 Ill. 126; *People ex rel. v. Cullom*, 100 Ill. 472; *Turnpike Co. v. Brown*, 8 Baxt. (Tenn.) 490; *Bates v. Taylor*, 87 Tenn. 319; *State ex rel. v. Towns*, 8 Ga. 360; *Railroad v. Randolph*, 24 Tex. 317; *Appeal of Hartranft, Governor*, 85 Pa. St. 433; *Mississippi v. Johnson*, 4 Wall. 475.

The same views are enunciated by several text writers. Thus High says: "While, as to purely executive or political functions devolving upon the chief executive officer of a state, and as to duties necessarily involving the exercise of official judgment and discretion, the doctrine may be regarded as uncontroverted that *mandamus* will not lie, yet as to duties of a ministerial nature and involving no element of discretion,

which have been imposed by law upon the governor of a state, the authorities are exceedingly conflicting and, indeed, utterly irreconcilable. Upon the one hand, it is contended, and with much show of reason, that as to duties of this character, the general principle allowing relief by *mandamus* against ministerial officers should apply, and the mere fact of ministerial duties having been required of an executive officer, should not deter the courts from the exercise of their jurisdiction. Upon the other hand, it is held that under our structure of government, with its three distinct departments, executive, legislative and judicial, each department being wholly independent of the other, neither branch can properly interfere with the duties of the other, and that as to the nature of the duties required of the executive department by law, and as to its obligation to perform those duties, it is entirely independent of any control by the judiciary. While the former theory has the support of many respectable authorities, and is certainly in harmony with the general principles underlying the jurisdiction as applied to purely ministerial officers, the latter has the clear weight of authority in its favor, and may be regarded as the established doctrine upon this subject." High on Extr. Leg. Rem. [2 Ed.], sec. 118.

Touching this subject Wood says: "The attempt on the part of some of the courts to interfere with the discharge of executive duties is not only in opposition to our theory of government and in excess of their power, but also attended with great danger. If the courts may interfere with the discharge of *any* ministerial duties of the executive department of the government they may with all, and we should have the singular spectacle of a government run by the courts, instead of the officers provided by the constitution. Each department of the government is essentially and neces-

sarily distinct from the others, and neither can lawfully trench upon or interfere with the powers of the other; and our safety, both as to national and state governments, is largely dependent upon the preservation of the distribution of power and authority made by the constitution, and the laws made in pursuance thereof. If the governor refuses or neglects to discharge his duties, exceeds his powers in flagrant cases, there is ample remedy by impeachment and removal from office. It is not believed that the courts have the power to discharge his duties for him, or to say what he shall or what he shall not do." Wood on Mand., pp. 123, 124. See, also, Merrill on Mandamus, sec. 97.

Although the precise point now presented has never been decided in this state, yet in *State ex rel. v. Governor*, 39 Mo. *loc. cit.* 398, the clear intimation is made by this court, speaking through WAGNER, J., that there was really no valid distinction between a *political* and a *ministerial* act of the governor, when considered with reference to the issuance of a *mandamus* against him.

There are many respectable authorities, however, which maintain views diametrically opposed to those here advanced. Most of them will be found collated in the brief filed for relator. *Railroad v. Moore*, 36 Ala. 371; *Middleton v. Low*, 30 Cal. 596; *Land Co. v. Routt*, 17 Col. 156; *Gray v. State ex rel.*, 72 Ind. 567; *Magruder v. Swann*, 25 Md. 173; *Groome v. Gwinn*, 43 Md. 572; *Chumasero v. Potts*, 2 Mont. 242; *State ex rel. v. Blasdel*, 4 Nev. 241; *State ex rel. v. Governor*, 5 Ohio St. 528; *State ex rel. v. Nicholls*, 7 S. Rep. (La.) 738. In addition to those cited, see *Martin v. Ingham*, 38 Kan. 641; *State v. Thayer*, 47 N. W. Rep. 704.

The fact that the governor has voluntarily submitted himself to the jurisdiction of this court has been pressed upon our attention as a reason why we

should pass on or adjudicate the question submitted; and cases have been cited, among them *Railroad v. Governor*, 23 Mo. 360, as showing that where the governor does not *claim* his exemption, then this court may adjudicate the matters at issue and leave the governor to claim his exemption *afterwards*. But we regard such cases as wrong in theory and unsafe and unsound in practice. If we have authority to render a judgment, then we have jurisdiction to enforce that judgment by all appropriate process, and need not inquire whether any exemption from that process will be pleaded. If, however, we have no jurisdiction over the chief magistrate, his consent will not confer it on us. We will not "assume a jurisdiction if we have it not;" we will not sit as a *moot court* and pass upon questions and enter a judgment thereon which we are powerless to enforce. "For all jurisdiction implies superiority of power; authority to try would be vain and idle, without an authority to redress; and the sentence of a court would be contemptible, unless that court had power to command the execution of it." 1 Cooley's Blackstone, 242.

As we do not possess any jurisdiction over the governor, we shall decline any further discussion of this cause, hold the demurrer well taken and deny the issuance of the peremptory writ. All concur.