STATE ex rel. William J. CASON et al.,
Relators,

v.

Christopher S. BOND, as the acting Commis-
sioner of Administration, et al.,
Respondents.

No. 58315.

Supreme Court of Missouri,
En Banc.

June 6, 1973.

Cullen Coil, Jefferson City, for relators.

John C. Danforth, Atty. Gen., Bruce C. Houdek, Asst. Atty. Gen., Jefferson City, for respondents.

FINCH, Chief Justice.

Original proceeding in mandamus. Art. IV, § 26, Mo.Const., V.A.M.S., authorizes the Governor to veto all or part of any item of money in an appropriation bill. The basic issue for decision herein is whether that section also allows the Governor to strike words which set out the *purpose* of an appropriation bill without vetoing the money appropriated. We hold that it does not.

On April 26, 1973, Relators, as taxpayers and as members of the 77th General Assembly, sought from this Court a writ of mandamus directing that authorization and issuance of warrants for expenditures under specified sections of Conference Committee Substitute for House Bill No. 16 of the 77th General Assembly (C.C.S.H.B. 16) be limited to those purposes specified in said sections as enacted by the General Assembly. The requested writ also would direct that Respondents give no effect to the deletion of words from those enumerated sections as set out in the Governor's April 3, 1973, veto message to the House of Representatives.

Relators named as Respondents the Honorable Christopher S. Bond, Governor, in his capacity of Acting Commissioner of Administration,[1] Honorable James I. Spainhower, State Treasurer, and Governor Bond in his official capacity as Governor of the State of Missouri. No relief of any kind was sought by Relators against Governor Bond as Governor. We issued our alternative writ of mandamus directed to the Acting Commissioner of Administration and the State Treasurer and they have made return thereto. In addition, the parties have filed a Stipulation of Facts which resolves the factual issues raised by the pleadings. Subsequent references to Respondents relate only to the Acting Commissioner of Administration and the State Treasurer.

Relators, as taxpayers, have standing to maintain this action. Miller v. Ste. Genevieve County, 358 S.W.2d 28 (Mo. 1962); Everett v. County of Clinton, 282 S.W.2d 30 (Mo.1955); State ex rel. Johnson v. Sevier, 339 Mo. 483, 98 S.W.2d 677 (1936). This being true, we need not address ourselves to the question of whether, as members of the General Assembly, the Relators would have independent standing to maintain this action.

1. Presently, a vacancy exists in the office of Commissioner of Administration. Under § 26.300.9, Laws of 1971, the Governor is Acting Commissioner of Administration.

The current General Assembly adopted C.C.S.H.B. 16, an appropriation bill providing funds for emergency and supplemental purposes. It then was sent to the Governor, who, on April 3, 1973, returned the bill which he had signed after making partial vetoes of certain sections. The details of those vetoes were set out in a message to the House of Representatives which accompanied the bill when it was returned.

C.C.S.H.B. 16 consists of 49 sections numbered from 16.010 to 16.530. The Governor totally vetoed §§ 16.460 and 16.-470. No question as to that action is raised in this proceeding. In addition, the Governor struck from §§ 16.490, 16.495, 16.500, 16.515 and 16.520 certain language pertaining to the purpose of these appropriation items. He did not veto or reduce the sum appropriated in each of said sections.

The following seriatim recital shows the sections in question, the words stricken by the Governor, his explanation of the reason for each of the vetoes (from the Governor's message of April 3, 1973, to the House of Representatives) and information from the Stipulation of Facts which discloses any payments heretofore made:

> "Section 16.490. To the Bi-State Development Agency
>
> ~~For partial payment of principal and interest on Equipment Trust Note~~
>
> From General Revenue ... $48,520.00"

"Section 16.490. I hereby veto and delete from Section 16.490 the words, 'For partial payment of principal and interest on Equipment Trust Note' for the reason that the note became due and payable on March 31, 1973, and Bi-State will divert other funds to insure that its equipment will not be seized or other action taken. If the note is not paid, these funds will be used for this purpose. If the note is paid, these funds will be used to replace the funds that were diverted for that purpose."

By stipulation, the parties agree that the money appropriated by § 16.490 was expended prior to the institution of this suit for partial payment of principal and interest on Equipment Trust Note, $48,520.00.

> "Section 16.495. To the Bi-State Development Agency
>
> For meeting the operating deficit of the transit system ~~for the period ending June 30, 1973~~
>
> From General Revenue .. $166,936.00

"Section 16.495. I hereby veto and delete from Section 16.495 the words 'for the period ending June 30, 1973' for the reason that the language would prevent payment of these funds to the Bi-State Development Agency until after June 30, 1973.'"

By stipulation, the parties agree the money appropriated was not expended prior to the institution of this suit; however, they also agree the money has since been expended in accordance with the provisions of the alternative writ.

> "Section 16.500. To the Office of Administration
>
> For Capitol Building Renovation ~~(West Side)~~
>
> From General Revenue .. $1,100,000.00"

"Section 16.500. I hereby veto and delete from Section 16.500 the words '(West Side)' for the reason that the renovation needs of the Capitol Building are not limited to the West Side."

By stipulation, the parties agree the money appropriated was not expended prior to the institution of this suit and to date has not been expended.

> "Section 16.515. To the State Park Board
>
> For ~~Operation of the~~ Lee Fine Airport ~~for~~ equipment to comply with the F.A.A. Regulations

From General Revenue .... $3,500.00"

"Section 16.515. I hereby veto and delete from Section 16.515 the words 'Operation of the' and 'for' for the reason that there is a grammatical inconsistency in this section."

By stipulation, the parties agree the money appropriated was not expended prior to the institution of this suit. The budget record shows as of May 11, 1973, total allotments of $3,500.00, unexpended balance of $3,500.00, outstanding orders of $3,076.56, and an unencumbered balance of $423.44.

"Section 16.520. To the Department of Agriculture

For payment ~~to the following companies~~ for work performed in connection with the 1972 State Fair and necessary operational expenses from ~~March 1 thru June 30, 1973~~

| | |
|---|---|
| ~~Danville Tent and Awning~~ | ~~$15,192.58~~ |
| ~~Lamberth Plumbing and Heating~~ | ~~30,840.49~~ |
| ~~Queen City Electric~~ | ~~45,916.61~~ |
| ~~Operation (from March 1 thru June 30, 1973)~~ | ~~38,993.00~~ |
| From General Revenue | $130,942.68 |
| ~~Operation (from March 1 thru June 30, 1973)~~ | |
| From State Fair Fees Fund | 40,448.00 |
| Total | $171,390.68" |

"Section 16.520. I hereby veto and delete from Section 16.520 the words 'to the following companies'; 'from March 1 thru June 30, 1973

| | |
|---|---|
| Danville Tent and Awning | $15,192.58 |
| Lamberth Plumbing and Heating | 30,840.49 |
| Queen City Electric | 45,916.61 |
| Operation (from March 1 thru June 30, 1973) | 38,993.00'; |

and '(from March 1 thru June 30, 1973)' for the reason that such language is unnecessary."

By stipulation, the parties agree that prior to the institution of this suit the following amounts were expended: Danville Tent and Awning $15,192.58; Lamberth Plumbing and Heating $30,840.49; and Queen City Electric $45,916.61. Subsequent to the institution of this suit and to the issuance of the alternative writs, the $38,993.00 was credited to the operation account and some money was spent, leaving a current balance of $38,674.73.

At the outset, Respondents question our jurisdiction to grant the relief sought by Relators. This contention is based on the language of Art. II, § 1, Mo.Const., which relates to the separation of powers and provides as follows:

"The powers of government shall be divided into three distinct departments— the legislative, executive and judicial— each of which shall be confided to a separate magistracy, and no person, or collection of persons, charged with the exercise of powers properly belonging to one of those departments, shall exercise any power properly belonging to either of the others, except in the instances in this constitution expressly directed or permitted."

We conclude that this section of the Constitution does not deprive us of jurisdiction in cases such as this. Prior decisions of this Court so establish. For example, in State ex rel. Donnell v. Osburn, 347 Mo. 469, 147 S.W.2d 1065 (1941), this Court issued its peremptory writ of mandamus to the Speaker of the House of Representatives directing him to open and publish the election returns with reference to the election of the governor and to declare as elected the person having the highest number of votes. The issue was raised as to whether the separation of powers section of the Constitution (which applies, of course, to legislative as well as executive and judicial branches) shielded the Speaker from a writ of mandamus from this Court. A unanimous en banc decision ruled that the Speaker's duty was purely ministerial and that he was subject to the

writ. In so holding, the Court said, 1. c. 1070:

"Nor does the office occupied by respondent as speaker of the House put him beyond the jurisdiction of mandamus. In Marbury v. Madison, 1 Cranch 137, 170, 2 L.Ed. 60, Chief Justice Marshall declared that 'it is not by the office of the person to whom the writ is directed, but the nature of the thing to be done that the propriety or impropriety of issuing a mandamus, is to be determined'. This Court followed that rule in effect in State ex rel. Robb v. Stone, 120 Mo. 428, 25 S.W. 376, 23 L.R.A. 194, 41 Am.St.Rep. 705. There we refused to issue mandamus against the governor on the ground that the performance or nonperformance of every duty placed upon the governor, who has 'supreme executive power,' involved the exercise of executive duty and discretion with which this court could not interfere. In no way would we be interfering in this case with the legislative power conferred on the legislature by issuing our writ since the nature of the thing to be done involves neither legislative duty nor discretion. If either were involved we could not interfere because of the constitutional separation of powers which we must and we do uphold.

"Our conclusion is that the speaker is an officer to whom we may properly direct our writ to command the performance of the ministerial duty involved."

The doctrine of the Donnell case was recognized and reiterated in the recent case of In re Marshall, 478 S.W.2d 1 (Mo. banc 1972).

■ Courts regularly pass upon the constitutionality of acts enacted by the General Assembly and signed by the Governor. This is a proper function of the judicial branch of government and does not violate the separation of powers provision in the Constitution. This was recognized in State ex rel. Jones v. Atterbury, 300 S.W. 2d 806, 810 (Mo. banc 1957), as follows: "The other branches of the state government are prohibited from exercising any powers belonging to the General Assembly 'except in the instances in this Constitution expressly directed or permitted.' Art. II, § 1, Constitution of 1945. *It follows that the courts cannot interfere with the action of the legislative branch unless the action taken is clearly contrary to some constitutional mandate.*" (Emphasis supplied.)

Relators cite and rely upon the case of State ex rel. Robb v. Stone, 120 Mo. 428, 25 S.W. 376 (1894), but that case does not establish that we have no jurisdiction in this case. The Robb decision was interpreted later by this Court in the Donnell case, supra, as meaning that mandamus would not lie against the Governor where it would interfere with the exercise of executive duty and discretion. In addition, this Court in State ex inf. Barrett ex rel. Bradshaw v. Hedrick, 294 Mo. 21, 241 S. W. 402 (banc 1922), held that the Robb decision did not apply to cases between persons other than the Governor wherein the validity of acts of the Governor are determined.[2]

We conclude that we do have jurisdiction to decide this case and, if appropriate, to issue a writ of mandamus.

This brings us to the basic issue herein, namely, whether Art. IV, § 26 of the Mo. Const., authorized the Governor's partial vetoes of language relating to purpose in the heretofore enumerated sections of the emergency appropriation bill. Do the words "may object to one or more items or portions of items of appropriation of money" authorize the action of the Governor in striking words from §§ 16.490, 16.495, 16.500, 16.515 and 16.520?

2. This doctrine was articulated in the concurring opinion by Chief Justice James T. Blair, but an examination of the report discloses that this concurring opinion was concurred in by three other judges and actually became the opinion of the Court.

This is a case of first impression in this state on this precise issue. However, we find that the courts of other states have considered such questions and those decisions are helpful in the resolution of this case.

In the case of In re Opinion of the Justices, 294 Mass. 616, 2 N.E.2d 789 (1936), the Supreme Judicial Court of Massachusetts reviewed the validity of the action of the Governor with reference to an item in an appropriation bill. The Governor had requested $100,000 "for payment of extraordinary expenses and for transfers made to cover deficiencies." The act provided the sum of $100,000 but made it subject to the condition that $50,000 be used to carry out the purposes of several earlier enumerated sections and that $10,000 be used to entertain the President on state visits. $5,000 was for other items. The Governor vetoed all of these enumerated purposes and then signed the bill, leaving the $100,000 undisturbed.

Article 63, § 5 of the Massachusetts Constitution provided that "the governor may disapprove or reduce items or parts of items in any bill appropriating money." The Massachusetts Court held that the action of the Governor in striking the language as to purposes of the appropriation was a nullity, saying, 2 N.E.2d l. c. 790:

" * * * The fact that this action relates solely to appropriation bills, in conjunction with the word 'reduce,' indicates clearly that the expression 'items or parts of items' refers to separable fiscal units. They are appropriations of sums of money. Power is conferred upon the Governor to reduce a sum of money appropriated, or to disapprove the appropriation entirely. No power is conferred to change the terms of an appropriation except by reducing the amount thereof. Words or phrases are not 'items or parts of items.' This principle applies to the condition attached to the appropriation now in question. That condition is not an item or a part of an item. The veto power conferred upon the Gover-

nor was designed to enable him to recommend the striking out or reduction of any item or part of an item. In the present instance His Excellency the Governor did not undertake to veto the appropriation of $100,000 made by item 101, or any part of it, nor to reduce that amount or any part of it apportioned to a specific purpose. He sought, rather, as shown by his message, to enlarge the appropriation made by the General Court by throwing the $100,000 into a common fund to be used for any one of several different purposes. We are of opinion that the power conferred upon him by said article 63 does not extend to the removal of restrictions imposed upon the use of the items appropriated."

Commonwealth v. Dodson, 176 Va. 281, 11 S.E.2d 120 (1940), considered the action of the Governor in vetoing several purpose or condition clauses in an appropriation bill. Section 76 of the Virginia Constitution provided that "the governor shall have the power to veto any particular item or items of an appropriation bill, but the veto shall not affect the item or items to which he does not object." In the course of its decision, the Virginia court said, 11 S.E.2d l. c. 127:

"We think it is plain that the veto power does not carry with it power to strike out conditions or restrictions. That would be legislation. Plainly, money devoted to one purpose can not be used for another, and it is equally plain that power to impose conditions before it can become available is legislation.

"An item in an appropriation bill is an indivisible sum of money dedicated to a stated purpose. It is something different from a provision or condition, and where conditions are attached, they must be observed; where none are attached, none may be added."

Both of these cases considered constitutional provisions quite similar to Art. IV, § 26 of our Constitution. They construe "item" as referring to a sum of money ap-

propriated. Both cases hold that the constitutional language authorizes veto action with reference to such *appropriation item*, but that it does not authorize deletion of *purpose or condition language* as to an appropriation item not vetoed.

Another persuasive decision is State ex rel. Teachers and Officers of Industrial Institute and College v. Holder, 76 Miss. 158, 23 So. 643 (1898). Section 73 of the Mississippi Constitution provided: "The governor may veto parts of any appropriation bill, and approve parts of the same and the portions approved shall be law." The Governor vetoed part of the purpose clause of an appropriation bill (but not the appropriation itself) and the issue was whether the Constitution authorized that action. In answering in the negative, the court said, 23 So. 1. c. 645:

"* * * Suppose a bill to create a reformatory for juvenile offenders, or to build the capitol, containing all necessary provisions as to purpose, amount of appropriation, and conditions; may the governor approve and make law of the appropriation, and veto and defeat the purpose or the conditions or both, whereby the legislative will would be frustrated, unless the vetoed purposes or conditions were passed by a two-thirds veto of each house? This would be monstrous. The executive action alone would make law which had never received the legislative assent."

Other cases which support the view expressed in the foregoing cases include Bengzon v. Secretary of Justice and Insular Auditor of the Philipine Islands, 299 U.S. 410, 57 S.Ct. 252, 81 L.Ed. 312 (1937); Miller, Auditor v. Walley, 122 Miss. 521, 84 So. 466 (1920); Fairfield v. Foster, 25 Ariz. 146, 214 P. 319 (1923); Black and White Taxicab Co. v. Standard Oil Co., 25 Ariz. 381, 218 P. 139 (1923); Fergus v. Russel, 270 Ill. 304, 110 N.E. 130 (1915); Fulmore v. Lane, 104 Tex. 499, 140 S.W. 405 (1911).

Respondents rely upon 3 California cases. In Reardon v. Riley, 10 Cal.2d 531, 76 P.2d 101 (1938), the court construed and applied provisions in the California Constitution which authorized the Governor to reduce or eliminate one or more items of appropriation of money while at the same time approving other portions of the bill. The General Assembly had appropriated $1,625,185 to the State Department of Industrial Relations. Within that appropriation the sums of $328,000 and $20,000 were to be expended as designated in the appropriation bill. In his message the Governor said he objected to and was eliminating the items of $328,000 and $20,000, giving as his reason that the Department of Finance was better able to make allocations. He then reduced the $1,625,185 to $1,397,185. The Court upheld the action of the Governor on the basis that he was entitled to and did veto items of $328,000 and $20,000. Necessarily, that included the directory language which pertained thereto. The Court further concluded that elimination of the specific items did not reduce the general appropriation. Hence, it was reduced only to the extent that the Governor specifically reduced it, namely, $1,397,185. That this decision does not support partial vetoes of directory language alone is shown by this language of the California Supreme Court, 76 P.2d 1. c. 104:

"This action upon his part did not, in our opinion, thereby improperly increase an appropriation without legislative action, nor did it constitute an unauthorized veto of conditional or provisional language used in connection with the specific and included items of appropriation. It was an 'elimination' of the specific and included items and a reduction of the general and inclusive item of appropriation. Such a conclusion appears to effectuate the intent of the Legislature without depriving the Governor of the full effect of the veto power granted him." It will be noted that the Court said this was not "an unauthorized veto of conditional or provisional language" relating to the appropriation.

We have read the other two California cases, Railroad Commission of California

v. Riley, 12 Cal.2d 48, 82 P.2d 394 (1938), and Pomeroy v. Riley, 12 Cal.2d 166, 82 P.2d 697 (1938), which are in accord with the Reardon case. We also have considered Green, Comptroller v. Rawls, 122 So.2d 10 (Fla.1960), on which Respondents rely, but we are not persuaded by any of them to construe Art. IV, § 26, as contended for by Respondents. None of Respondents' cases involve situations in which a Governor struck only words specifying the purpose of an appropriation. In all of them, an appropriation of a specific number of dollars for a specified purpose was vetoed. The appropriated sum was an "item" within the language of the Constitution. Some confusion arises from the fact that a lump sum appropriation (of which the vetoed smaller items were a part) was to remain intact, undiminished by the veto. We do not have a comparable situation before us. In any event, to the extent that such decisions are inconsistent with the decisions in Massachusetts, Virginia and Mississippi, we simply decline to follow them.

■ We hold that "item" as used in Art. IV, § 26, refers to a separable sum of money appropriated. It does not refer separately to words, phrases or sentences which express purposes or conditions with reference to the appropriation made. Consequently, when the Governor struck words from §§ 16.490, 16.495, 16.500, 16.515 and 16.520, leaving the appropriation itself standing, he exceeded the veto authority conferred by Art. IV, § 26 of our Constitution.

■ In reaching this conclusion, we take cognizance of the fact that when the Governor takes part in appropriation procedures, he is participating in the legislative process and the language conferring such authority is to be strictly construed. This fact was recognized by this Court in the case of Brown v. Morris, 290 S.W.2d 160, 168 (Mo. banc 1956), wherein the court said:

"The veto power of the executive should not be construed to restrict the power of the general assembly or the people unless such intent clearly appears. Its nature and function is thus stated in 82 C.J.S., Statutes, § 52, p. 85: 'The authority of an executive to set aside an enactment of the legislative department is not an inherent power, and can be exercised only when sanctioned by a constitutional provision, and only in the manner and mode prescribed. The executive's veto power is a power conditionally to prevent legislation, but is not the power to enact new laws or to recall or modify old laws. The veto power is in derogation of the general plan of the state government, and provisions authorizing it must be strictly construed, so as to limit its exercise to the powers expressly enumerated or necessarily implied.'"

Paraphrasing what the Court said in the Donnell case, it thus is clear that by issuing our writ of mandamus herein, we in no way interfere with the executive function conferred by the Constitution on the Governor and the executive department of government.

Respondents argue that the vetoes by the Governor did not change the purpose of the appropriations as directed by the General Assembly, and for that reason were in compliance with the Governor's powers. They cite as an example a letter written by the Chairmen of the Appropriations Committees of the House and Senate concerning funds appropriated by § 16.500. That letter to the Governor's Assistant stated that legislative intent with reference to the $1,100,000 appropriated by § 16.500 was that $1,004,000 was for renovation of the west side of the Capitol building and $96,000 was for improvements to provide for legislative office space and committee hearing rooms, including moving and rental expenses.

■ This contention by Respondents regarding legislative intent is not pertinent to the issue of whether mandamus will lie herein. The proceeding brought by Rela-

tors does not seek to have us determine the meaning of language in the appropriation bill. Instead, the petition seeks merely a determination that the Governor had no authority to strike purpose language from the appropriations in question, and asks that the Respondents be directed to issue and sign only warrants which are in conformity with the appropriation bill as enacted by the General Assembly. Hence, the issue is whether Art. IV, § 26 of the Constitution authorizes the partial vetoes which struck language as to purpose or terms of the appropriations, not what the language in the various sections means. Consequently, the letter from the two Appropriations Chairmen is not material to the issue we decide.[3]

■ Certain other contentions by Respondents require some discussion. In the first place, they assert that Relators failed to demand of Respondents the relief prayed and hence a writ of mandamus should not issue. We overrule this contention. Paragraph 7 of the Agreed Statement of Facts recites that prior to institution of this suit, some of Relators made inquiry of Robert James, the Governor's Assistant in charge of the Office of Administration, as to whether in the operation of that office he would give effect to the changes made in C.C.S.H.B. 16 by the Governor's vetoes. Mr. James advised he would. Any further demand or request under such circumstances would appear to be useless and unnecessary.

■ Next, Respondents say that Relators failed to exhaust their non-judicial remedies in that there was no attempt to override the Governor's veto. We overrule this contention. The action of the Governor in striking merely purpose language is not an authorized veto under Art. IV, § 26. It is a nullity, as the Court observed in the Massachusetts case of In re Opinion of the Justices, supra. Hence, there is nothing to override, and such an attempt is not required. The Supreme Court of Illinois, in Fergus v. Russel, supra, overruled a contention that an attempt to override such action was necessary.

■ Next, Respondents claim that all issues are moot. As previously noted, the case is moot as to §§ 16.490 and 16.495 insofar as any further order by this Court is concerned, but the case is not moot as to the other sections. The fact that Respondents say that in future expenditures they will disburse funds as the General Assembly intended does not dispose of the case.

■ Finally, Respondents claim that the vetoes in question are valid on the basis of historical precedent. In support thereof, Respondents point to paragraph 6 of the Stipulation of Facts which recites various messages by a former Governor which struck purpose or directory language from appropriation items. Relators concede that such similar vetoes have occurred, but say that they are immaterial to the issue presented. We agree. Unquestionably, this is not the first instance in which a Governor of Missouri has stricken directory or purpose language with reference to an appropriation permitted to stand. However, those actions did not reach this Court for review. The fact of such prior occurrences cannot enlarge the constitutional authority of the Governor with respect to his right to make partial vetoes under Art. IV, § 26. They do not validate the vetoes here in question.

In view of the fact that Relators sought no relief against Governor Bond in his ca-

---

3. Interpretation of statutes as well as constitutional provisions is a judicial function and may be made when raised in appropriate litigation. United States v. American Trucking Association, Inc., 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1939) ; Woods v. Petchell, 175 F.2d 202 (8th Cir. 1949) ; City of St. Louis v. Triangle Fuel Co., 193 S.W.2d 914 (Mo. App.1946) ; Rose v. Franklin Life Ins. Co., 153 Mo.App. 90, 132 S.W. 613 (1910) ; see also Mo.Digest, Key No. 176. This case does not raise such issues.

pacity as Governor, we dismiss this proceeding as to him as Governor. As to the other Respondents, we make our writ peremptory with reference to the appropriations provided in §§ 16.500, 16.515 and 16.520.

All concur.