STATE of Missouri, ex rel., MISSOURI HIGHWAY AND TRANSPORTATION COMMISSION, Relator,

v.

The Honorable George J. PRUNEAU, et al., Respondents,

and

WAYNE COUNTY, Missouri, by and through its Presiding Judge, et al., Plaintiffs-Respondents,

v.

STATE of Missouri, ex rel., J.B. DILLINGHAM, et al., Defendants-Appellants.

Nos. 13060, 13064.

Missouri Court of Appeals, Southern District, Division Three.

May 13, 1983.

Bruce A. Ring, Chief Counsel, Rich Tiemeyer, Asst. Chief Counsel, John W. Koenig, Jr., Asst. Counsel, Jefferson City, for relator and defendants-appellants.

Robert M. Ramshur, Robert M. Ramshur & Associates, P.C., Piedmont, for plaintiffs-respondents.

GREENE, Chief Judge.

This is a prohibition proceeding instituted at the relation of the Missouri State Highway and Transportation Commission (Commission) to prohibit and restrain George J. Pruneau, Associate Circuit Judge of Wayne County, Missouri, Presiding Judge William F. Boyer and Associate Judges Wayne Bearden and Herman Wilfong of the Wayne County Court from taking any further action, and to stay enforcement of a peremptory writ of mandamus issued by Judge Pruneau on December 15, 1982, in Wayne County Circuit Court Case No. CV–9–82–137–CC.

The facts and legal history of this case are unusual, to say the least, and raise serious questions as to who has the authority and responsibility to take lawful emergency measures, including commandeering, seizing, and using property not their own, to alleviate the effects of disasters, either natural or man-made.

On December 4, 1982, Kenneth J. Rothman, Acting Governor of the State of Mis-

souri, by Executive Order 82–23, declared Wayne, Bollinger and Butler counties to be disaster areas by reason of heavy rainfall followed by severe flooding. The order recited that the safety and welfare of the citizens of those counties required an invocation of § 44.100, RSMo 1978. This statutory section specifies the powers of the governor during an emergency, the definition of which term includes a natural disaster, such as a flood of major proportions. §§ 44.010(3), (4). Those emergency powers include the right, during the period that the state of emergency exists or continues, to "seize, take or requisition to the extent necessary to bring about the most effective protection of the public" certain things, such as communications systems, fuel, and facilities for housing, feeding, and hospitalization of the people. § 44.100.1(4)(c). The statute also authorizes the governor to enforce and put into operation any plan relating to disasters, to assume direct operational control of all emergency forces and volunteers, and to take action and give direction to state and local agencies as "may be reasonable and necessary for the purpose of securing compliance with the provisions of this law and with the orders, rules and regulations made pursuant thereof." §§ 44.100.1(4)(a), (b).

Executive order 82–23 went on to authorize that the approved "Missouri Comprehensive Emergency Preparedness and Disaster Relief Plan" be activated, and authorized the use of "such agencies, personnel and equipment of the State as may be necessary for the preservation of life, property and the restoration of public facilities in those counties." It also specifically authorized and ordered several state agencies, including the Commission, to utilize the personnel and equipment of their agencies "in support of local government as may be deemed appropriate under the circumstances" during the period the order was in effect, which was until February 1, 1983.

On December 10, 1982, Wayne County, by and through its county court, consisting of Presiding Judge William R. Boyer and Associate Judges Wayne Bearden and Herman Wilfong, filed a petition in the Circuit Court of Wayne County asking for relief consisting of a court order in the nature of mandamus directing nine defendants, who were members or employees of the Commission "for their cooperation and for the loan of 3 motor graders, 3 dump trucks, and 1 front end loader, together with their operators, for utilization by plaintiff for the ensuing five-day period or until further Order of this Court, and for such other and further relief as the Court deems proper and just in the circumstances." The petition recited that the state of Missouri owned, and that the Commission operated certain equipment for the use and benefit of the people of Missouri, and that a part of that equipment, including motor graders, dump trucks and front end loaders, and operators for the same, were in Wayne County. It further recited that because of the flood, much of the county-maintained road system was unusable, and that Wayne County did not have the equipment and personnel to repair the roads for evacuation and rescue purposes, and to permit the Wayne County residents served by the roads to travel them to obtain food, water, and other supplies. The petition stated that "Plaintiffs have requested assistance through the District Engineer, who has responsibility for the Wayne County area regarding defendants' equipment, but defendants, through their District Engineer, have failed and refused and continue to fail and refuse to provide said equipment [the motor graders, dump trucks, and front end loaders] and operators, in violation of law." The petition did not state what law defendants were violating, and did not state what ministerial duty defendants had, if any, to furnish the demanded equipment and operators to Wayne County or its county court. The petition closed by stating the county had no adequate remedy at law except the requested court order, and that it needed the equipment and operators "for the purposes of emergency repairs of public and county roadways and thoroughfares, as to plaintiff seems necessary in its discretion."

The filing of the petition triggered a series of events which, in retrospect, seem

incredible. On the same day that the petition was filed, before service was obtained upon defendants, and without notice to them, Judge Pruneau issued a "preliminary order of Mandamus." As a basis for his alleged jurisdiction, the associate judge declared that no circuit judge was within the county to take up and consider the petition,[1] that a condition of extreme emergency existed, and that the allegations of the petition were true. He then ordered the defendants, upon receipt of the writ and petition, to provide County Judge Boyer, as the chief executive officer of Wayne County, with three motor graders, three dump trucks, one front end loader and competent operators for the equipment, for utilization by Wayne County "untill [sic] further Order of a Court of competent jurisdiction is entered disolving [sic] this Order or until a peremptory Writ of Mandamus may be entered after a hearing to resolve the issues which affect the rights of all parties." The order closed by directing the defendants to appear before the judge on December 15, 1982, at 10 a.m. and "show how you have complied with this Writ and to respond to the allegations of the plaintiffs." The order did not authorize any agent of Wayne County to seize the property in question.

On Saturday, December 11, armed with the order, Boyer, Bearden, and an accompanying entourage of deputy sheriffs, newsmen, and county employees, without notice to any of the defendants, proceeded to two storage sheds north of Piedmont, Missouri, entered the buildings by means of acts that would constitute felonies if not committed under legal authority (breaking latches of locked doors), and removed two motor graders, two dump trucks, and a front end loader, the property of the Commission, from the sheds. Boyer, Bearden, and their associates evidently used the equipment that day in repairing county roads, and returned it to the sheds that evening. During the night, Commission employees removed the equipment from the county, fearing a repetition of the incident.

The record does not indicate that any of the named defendants were ever personally served. It does indicate that a summons, directed to defendant J.B. Dillingham, Chairman of the Commission, was received at the Commission's office in Jefferson City at 10:30 a.m. on December 13, directing him to answer the petition and to appear in court before Judge Pruneau on December 15 at 10 a.m. Nevertheless, defendants, on December 15, filed a motion to quash the preliminary order of mandamus. The motion, in essence, alleged Judge Pruneau had no jurisdiction to enter the mandamus order, or if he did, that he abused his discretion in entering it under the facts here. The motion requested that the order be quashed, or in the alternative, that it be stayed for 10 days to give defendants time to apply to this court for a writ of prohibition. Defendants also filed an answer to the mandamus petition. The answer, other than admitting Wayne County was a political subdivision of the State of Missouri, that the Commission owned certain equipment used to maintain state roads, and that Acting Governor Rothman had issued Executive Order 82–23, consisted of a general denial.

On the same day, December 15, Judge Pruneau held a hearing and made findings of fact and conclusions of law. The trial court found that it had jurisdiction to issue writs of mandamus, including the ex parte preliminary order; that Executive Order 82–23 had been issued on December 4, 1982, and that on December 10, "a condition of extreme emergency, including life threatening emergencies existed"; that facts describing the emergencies had been communicated to the defendants by plaintiffs, and assistance from defendants had been requested through the offices of the governor,

---

1. Actions in mandamus are not included among the classes of cases which an associate circuit judge may originally hear and determine under § 478.225.2, RSMo 1978. Presumably, the recital noted was to invoke the limited power to act in the absence of a circuit judge mentioned in § 478.225.2(7). Prior to his taking up the cause on the merits and issuing a peremptory writ five days later, an assignment of the case was made to Judge Pruneau as contemplated by § 478.240.2.

adjutant general, and of the defendants; and that defendants had not responded to the demands and requests of plaintiffs. The document further recited that the court found that § 44.110, RSMo 1978 provides that executive officers of political subdivision of the state are "directed to utilize the services, equipment, supplies and facilities of existing departments, offices, and agencies of the state," and that Executive Order 82–23 ordered "The State Highway Commission to utilize the personnel and equipment of their respective agencies in support of local government, as may be determined appropriate under the circumstances during the period in which this Order is effective." The court further found that defendants had refused to comply with the requirements of the statute and Executive Order 82–23, and had, on advice of counsel, removed their equipment from Wayne County. The trial court concluded that such action constituted a further refusal on the part of defendants to comply with the statute and Executive Order, and "was therefore not simply a matter of abuse of discretion." The trial court then overruled defendants' motion to quash the preliminary writ, refused to grant a stay so that defendants could seek a writ of prohibition in a higher court, and issued a peremptory writ of mandamus, ordering defendants to provide plaintiffs with three motor graders, three dump trucks and a front end loader, together with competent operators, for utilization by plaintiffs to make emergency repairs of Wayne County roads for a period of time not to exceed 10 days. The writ also authorized plaintiffs to "use the police power of the County to retrieve the equipment and enforce this Order." Allen F. Laffoon, district engineer of the Commission, who was one of the defendants, was present in court when the order was entered. Laffoon's district included Wayne County. On December 16, plaintiff Boyer contacted Laffoon by telephone and asked him if Laffoon would provide the equipment in question. On advice of counsel, Laffoon refused to comply. Plaintiffs, on December 16, filed a motion asking that Laffoon be cited for contempt of court for refusing to comply with the writ of mandamus. The trial court issued an order dated December 16, 1982, directing Laffoon to appear before it on December 20 to show cause why he should not be held in contempt of court. (Laffoon did appear as ordered, and the proceeding was continued by the trial court until January 11, 1983.) The court, also on December 16, issued orders to the sheriffs of Iron and Butler Counties to search for and seize, if found within their county, the maintenance equipment owned by the Commission and described in the peremptory writ. It is noteworthy that Butler County is not even in the circuit (No. 42) in which Judge Pruneau is an associate circuit judge. At approximately 6 p.m. on December 16, Sheriff K.W. Ruble of Iron County served a copy of the peremptory writ on Gerald H. Johnson, a named defendant, who was the Commission's area supervisor for Iron County. The writ was served at the Commission's maintenance shed at Annapolis, Missouri. Accompanying Ruble were Boyer, Robert Ramshur, the prosecuting attorney of Wayne County, and seven or eight other men. Johnson explained to the assembly that he did not have keys to the vehicles located there which had been brought from Wayne County, whereupon it was decided, apparently by Ramshur, that equipment normally stationed at Annapolis would be seized and taken to Wayne County. Two dump trucks, a motor grader, and a front end loader which were the property of the Commission were seized, and taken to Wayne County for use in repairing the county roads.

On December 17, 1982, the Commission filed a petition for a writ of prohibition in this court directed to Associate Circuit Judge Pruneau and County Court Judges Boyer, Bearden, and Wilfong (respondents). The petition was accompanied by numerous exhibits, the contents of some of which are referred to above, and by supporting suggestions.

While not a party in the case below, the Commission is vitally interested in the outcome of it, and is, in our opinion, a neces-

sary party to that action, and, as such, it was entitled to seek prohibition here. *State ex rel. St. Louis County v. Stussie,* 556 S.W.2d 186, 187–188 (Mo. banc 1977). The Commission may sue in its official name. § 226.100, RSMo 1978. In response to the petition, this court, through the Honorable James K. Prewitt as acting chief judge, issued a preliminary order in prohibition ordering Pruneau, Boyer, Bearden and Wilfong to 1) take no further action in Wayne County Circuit Court Case No. CV–9–82–137–CC, 2) stay enforcement of the peremptory writ of mandamus issued by Judge Pruneau on December 15, and 3) answer the petition and show cause why our preliminary order in prohibition should not be made permanent.

Respondents filed their answer to the petition, together with suggestions which they ask us to consider, and we do consider, as their brief in support of their position. The Commission then filed its reply to respondents' answer, together with supporting exhibits, and thereafter filed its brief in support of its position.

We consider the matter on the pleadings, exhibits, suggestions, and other matters of record, Rule 84.24, and consolidate this cause with our case No. 13064, which is the direct appeal by the individual defendants named in Wayne County Case No. CV–9–82–137–CC from the peremptory writ of mandamus, as both cases involve the basic question of whether Judge Pruneau had jurisdiction to issue the preliminary order and peremptory writ of mandamus in question.

We first dispose of the collateral issues raised by respondents in their answer and suggestions. Respondents contend we had no jurisdiction to issue our preliminary order in prohibition or to continue exercising jurisdiction because any determination by us on the merits would involve the validity of, or "constitutional questions" arising under, Article IV, Sections 1, 5, 29 and 30(b) of the Missouri Constitution, which invades the exclusive jurisdiction vested in the Supreme Court by Article V, Section 3. The sections referred to cover duties, powers and responsibilities of the governor and of the Commission.

■ Respondents' contention has no merit. In the first place the court of appeals has general superintending control of all inferior courts in its district, which control includes the power to issue remedial writs in cases involving matters which might normally be within the exclusive appellate jurisdiction of the Supreme Court. *State ex rel. Campbell v. Anderson,* 536 S.W.2d 200, 201 (Mo.App.1976). Second, no party has called on this court to decide the *validity* of any of the constitutional provisions cited. Finally, "constitutional questions," whether in the nature of construction or application of constitutional provisions, are no longer assigned to the exclusive appellate jurisdiction of the Supreme Court. Mo. Const., Art. V, § 3, as amended August 3, 1976, and November 2, 1982. In any event, this court is not, at most, required to do more than apply rather than construe the provisions, a matter within the power of the court even under the former jurisdictional limitations. *City of Florissant v. Rouillard,* 495 S.W.2d 418, 420 (Mo.1973).

■ The second collateral issue is respondents' claim that our preliminary order in prohibition should be quashed and the Commission's petition dismissed because at the time the petition was filed, the Commission had two adequate remedies at law.

The first supposedly adequate remedy would involve a claim for damages by the Commission against Wayne County to be filed in the Wayne County Circuit Court to determine what amount the Commission was entitled to for the use of its equipment by Wayne County. Such a remedy by claim for damages is apparently based on § 44.-100.2, wherein a scheme in the nature of an eminent domain proceeding is established for cases in which the governor, in the exercise of emergency powers, shall seize, take or requisition property. The exercise of such remedy obviously would presume that Wayne County had the legal authority to seize and use the property of the state or one of its agencies. This does not provide a clear-cut and adequate remedy to test the

very validity of the seizure or the court order pursuant to which the seizure occurred.

Respondents next suggest that the remedy of appeal, taken by the Commission in the case below, was adequate. Such a remedy, with its attendant delays was not adequate. At the time it applied for the writ, the Commission's property had been seized under a court order it questioned, and one of its employees was in danger of being found in contempt of court, and possibly jailed, for declining to comply with a court order at the direction of his superiors. It is true that prohibition normally will not lie when directed to an appealable order. But appeal must provide *adequate* relief. Rule 84.22. In unusual cases, like this one, where substantial prejudice is imminently threatened, and where the trial court's jurisdiction is questionable, the fact a direct appeal also would lie does not prevent this court from exercising its writ power. *State ex rel. Associated Transport Corp. v. Godfrey,* 464 S.W.2d 776, 779 (Mo.App.1971); *State ex rel. Templeton v. Seehorn,* 208 S.W.2d 789, 794 (Mo.App.1947). The contention has no merit.

▪ The only real question here is whether the trial judge had jurisdiction to issue the preliminary order and peremptory writ of mandamus, under which the members of the county court claimed authority to commandeer, seize and use property which did not belong to Wayne County. Mandamus should issue only when the moving party proves that there is an existing, clear, and unconditional right to the relief requested. *State ex rel. Sprague v. City of St. Joseph,* 549 S.W.2d 873, 879 (Mo. banc 1977). In addition, the writ issues only where mere ministerial acts or duties imposed by law are sought to be compelled. *State ex rel. Lane v. Kirkpatrick,* 485 S.W.2d 62, 64 (Mo.1972). Such duties must be definite, and imposed by law under admitted or proved facts. *State ex rel. Phillip v. Public School Retirement System,* 364 Mo. 395, 262 S.W.2d 569, 573 (Mo. banc 1953). What respondents are contending here is that employees of the Commission had a legal duty to turn over to the Wayne County Court, on demand, road maintaining equipment belonging to the Commission, and upon its failure to do so, were subject to being compelled, by court order, to accede to the demands of the county court.

Seizure of property by the government, or any political subdivision thereof, has always been looked upon with deep suspicion by our people, and, in fact, is constitutionally prohibited, unless done under the auspices of due process of law. U.S. Const., Amendments 5, 14; Mo. Const., Art. I, § 10.

Respondents claim that they were justified in taking the Commission's property for their own use because such action was necessary, due to the existence of an emergency. This argument has been used down through the history of mankind to justify every sovereign act which in the bright light of reason and calm debate might be said to be excessive or repressive. Such sovereign acts have included the imposition of martial law, establishment of curfews, and suspension of the writ of habeas corpus, but never have any of such acts been justified in this country, after the establishment of the constitutional guarantees of due process, unless such acts are specifically authorized by the constitution and laws of the sovereign state.

The general assembly of Missouri, recognizing that there must be a coordinated effort to cope with natural and man-made disasters, passed into law the Civil Defense Act. Ch. 44, RSMo 1978. As a part of this act, the governor, as the chief executive officer of the state, has general direction and authority over disaster control operations and may assume direct control over all or part of a disaster response if local capabilities are exhausted. § 44.022.1. He is generally authorized to direct the cooperation of state agencies and officials and local political subdivisions in performing emergency functions. § 44.022.3(2). Under specified conditions, the governor or the legislature may declare the existence of a state of emergency. § 44.100.1(1). In the event that he does so, the governor, under emergency powers granted him by law,

# 288

may, as mentioned earlier, put emergency response plans into operation, control emergency forces and operations, and seize certain types of property. §§ 44.100.1(4)(a)–(c). No such power is given to a political subdivision such as Wayne County. The powers of political subdivisions are set out in § 44.080, and do not include the right to seize the property of others for their own use. The provision that political subdivisions may "expend funds, make contracts, obtain and distribute equipment, materials, and supplies for civil defense purposes" may not possibly be construed as an authorization to seize property.

Furthermore, the contention, emphasized in Judge Pruneau's findings and conclusions, that because a state of emergency existed as pronounced in Executive Order 82–23, the county was entitled to the equipment in question on demand by reason of the provisions of § 44.110 is not supported by either law or logic. No right is given a county to commandeer the Commission's employees and equipment for use in repairing the county roads. There is nothing in the statute relied on which could even be remotely construed to justify the seizing and use of Commission property by Wayne County officials on the basis of a unilateral decision by the county court that such action was "necessary." The statute in question directs the officers and personnel of all state agencies to cooperate with and extend their services and facilities regardless of their usual functions and services "*to the governor and to the disaster organizations of the state upon request.*" It alters neither the discretionary evaluation of the emergency situation to be made by the governor or his designated agents under the guidelines of the regulations heretofore referred to, nor the need for a specific directive to be given to the appropriate state agency as to the extent of aid to be given to political subdivisions. Local government is

authorized to utilize the services, equipment and supplies of the agency so directed to combat the emergency, but there is nothing in the statute that permits, even by implication, a political subdivision to commandeer and use property as was done here.

Respondents place some emphasis on a belief that Executive Order 82–23 itself had the effect of directing the Commission to make its personnel and equipment available to the local government in the disaster area. Executive Order 82–23 activated the "Missouri Comprehensive Emergency Preparedness and Disaster Relief Plan." Missouri Code of State Regulations, 11 CSR 10–11.-010.[2] These regulations, which establish an orderly procedure for supplying necessary emergency relief, provide that if a local government needs state assistance, the executive head of the political subdivision, who in this case is respondent Boyer, makes his request "through established channels" for such assistance of the governor, or his designee, who under the regulations, and the law as stated in Chapter 44, is the adjutant general.[3] The regulations further provide that upon receipt of such request, *and upon approval of the governor or his designee,* each department and agency of the state will respond immediately to the extent required by the nature of the request and within its capability to perform. In the case of the Commission, this would include providing available assistance to local government within the disaster area for the protection of life and property.

Respondents do not allege or prove that the governor or the adjutant general approved their request for assistance or that such officials *directed* the Commission to assist Wayne County, and that the Commission ignored or refused such directive.

A careful reading of Executive Order 82–23 and the regulations constituting the emergency plan shows that they permit the governor or his designee, after receiving a

---

**2.** The plan is referred to in the published title of the regulations cited as the "Disaster Operations Plan" and in their text as the "Emergency Operations Plan." The plan has, as is directed by § 44.024.1(5), been prepared by the adjutant general and approved by the governor.

**3.** It should be noted that in all respects the adjutant general is subject to the direction and control of the governor in carrying out the emergency response program. § 44.024.3.

request from local government for emergency assistance, to evaluate such request, and to determine what precise assistance is justified, and to direct the appropriate agency, here the Commission, to provide such assistance. This process involves an exercise of discretion by the governor.

 Executive Order 82–23 did not accomplish that exercise of discretion. Furthermore, the courts of this state may not interfere with, or attempt to control, the exercise of discretion by the executive department in those areas where, as in this case, the law vests such right to exercise judgment in a discretionary manner with the executive branch of government. *State ex rel. State Highway Commission v. Sevier,* 339 Mo. 479, 97 S.W.2d 427, 428 (Mo. banc 1938); *Selecman v. Matthews,* 321 Mo. 1047, 15 S.W.2d 788, 789 (Mo. banc 1929). In a larger sense, a court generally may not, by mandamus, control the exercise of discretion where it could be exercised lawfully in a variety of ways, including by the choice not to act at all. *State ex rel. Schultz v. Harper,* 573 S.W.2d 427 (Mo.App. 1978). These limitations on the judicial branch become particularly sensitive where, as here, the law places discretion at the highest levels of the executive department. *State ex rel. Robb v. Stone,* 120 Mo. 428, 25 S.W. 376 (Mo.1894); *State ex rel. Bartley v. Governor,* 39 Mo. 388 (1867); Mo. Const., Art. II, § 1. Therefore, the Circuit Court of Wayne County had no power to circumvent the sole procedure found in the law of this state for obtaining the emergency use of property of the Commission.

 In conclusion, we find nothing in the Missouri Constitution, statutes, administrative rules, or Executive Order 82–23 that gives respondents the authority they claim, even in emergency situations. We further find that the authority to direct the use of the facilities, personnel, and equipment of agencies of the state of Missouri during periods of declared emergencies rests exclusively in the governor, or his designees, subject to his discretion.

The trial court's complained of orders made in case No. CV 9–82–137–CC in the Circuit Court of Wayne County usurped the discretion and authority of the executive branch and were in excess of the jurisdiction of the trial court. To hold otherwise could result in chaos. In this case, Executive Order 82–23 declared three counties to be disaster areas. Suppose that 10, 20, or 30 had been so affected, and the county courts in each of them resorted to self-help, with the aid of understandably sympathetic local courts, to take upon themselves the right to direct, control, and use the personnel and equipment of the Highway and Transportation Department, the Conservation Commission, the Highway Patrol, the National Guard, and other state agencies for such purposes and for whatever length of time the county courts decreed. In such situation, we would have all chiefs and no Indians, and a Hydra without a head. The ensuing brouhaha of claims of priority and superior need would be intolerable.

We recognize that the Wayne County Court was faced with an emergency situation and needed to quickly repair its damaged county roads. We also recognize that it was proceeding on the basis of legal advice. We also note, from our examination of the record that the Commission's area supervisory personnel seemed more concerned with form than with substance during the critical 12–13 days in question, and that they could, and should, have made specific recommendations to the governor as to what Commission activity and service could and should be provided to Wayne County to protect the lives and property of its people, and to request the governor to authorize the Commission to perform those life and property saving services that were necessary. The people of Wayne County deserved better than they got here from all concerned. There was enough blame to go around.

The preliminary order in prohibition issued in our case No. 13060 is made absolute. The orders of the trial court in Wayne County Circuit Court Case No. CV–9–82–137–CC, consisting of a preliminary order of mandamus issued December 10, 1982, a peremptory writ of mandamus issued Decem-

ber 15, 1982, orders to the sheriffs of Butler and Iron counties dated December 15, 1982, directing those sheriffs to search for and seize road maintenance equipment belonging to the Commission that may have been located in those counties, and the order dated December 16, 1982, directing Allen F. Laffoon, a defendant in Wayne County Case No. CV–9–82–137–CC to show cause why he should not be held in contempt for refusing to comply with the trial court's peremptory writ of mandamus are declared to be void, as the trial court had no jurisdiction to enter them for the reasons stated herein. We further hold that the trial court had no jurisdiction to grant any affirmative relief to the plaintiffs below, under the pleaded facts and conclusions in plaintiffs' petition. In our case No. 13064, which is the appeal by the defendants in case No. CV–9–82–137–CC from the trial court's orders declared void here, the cause is remanded to the trial court with directions to set aside its void orders referred to above, and to dismiss plaintiffs' petition with prejudice. Appeal in case No. 13064 is dismissed as moot.

CROW, P.J., and FLANIGAN, MAUS and PREWITT, JJ., concur.